HOME INSURANCE COMPANY *v.* BALTIMORE WAREHOUSE COMPANY.

1. A policy of insurance taken out by warehouse-keepers, against loss or damage by fire on "merchandise, their own or held by them in trust, or in which they have an interest or liability, contained in" a designated warehouse, covers the merchandise itself, and not merely the interest or claim of the warehouse-keepers.
2. If the merchandise be destroyed by fire, the assured may recover its entire value, not exceeding the sum insured, holding the remainder of the amount recovered, after satisfying their own loss, as trustees for the owners.
3. Goods described in a policy as "merchandise held in trust" by warehouse-men, are goods intrusted to them for keeping.   The phrase, "held in trust," is to be understood in its mercantile sense.
4. A policy was taken out by warehousemen on "merchandise" contained in their warehouses, "their own or held by them in trust, or in which they have an interest or liability."   Depositors of the merchandise, who received advances thereon from the warehousemen, took out other policies covering the same goods.   *Held,* that the several policies constituted double insurance, and that they bear a loss proportionally.
5. In a case of contributing policies, adjustments of loss made by an expert may be submitted to the jury, not as evidence of the facts stated therein, or as obligatory, but for the purpose of assisting the jury in calculating the amount of liability of the insurer upon the several hypotheses of fact mentioned in the adjustment, if they find either hypothesis correct.
6. What evidence may be submitted to a jury from which they may find a waiver of preliminary proofs.
7. No part of a letter written as an offer of compromise is admissible in evidence.

ERROR to the Circuit Court of the United States for the District of Maryland.

This was assumpsit by the defendant in error, commenced June 2, 1873, on a policy of insurance issued to it Dec. 7, 1869, by the plaintiff in error, and containing, among others, the following provisions : —

"By this policy of insurance the Home Insurance Company, in consideration of $100 to them paid by the insured hereinafter

named, the receipt whereof is hereby acknowledged, do insure Baltimore Warehouse Company against loss or damage by fire to the amount of $20,000, on merchandise hazardous or extra hazardous, their own or held by them in trust, or in which they have an interest or liability, contained in that part of the State tobacco-warehouse No. 2, used by them, lying between Frederick-Street Dock and Long Dock, separated by a street from the south end of the Maryland Sugar Refinery. Other insurance permitted without notice, unless required.

" To cover whilst on the street and pavement around said warehouse. As per application.

" And the Home Insurance Company above named, for the consideration aforesaid, do hereby promise and agree to make good unto the said assured, their executors, administrators, or assigns, all such loss or damage, not exceeding in amount the sum insured, as shall happen by fire to the property as above specified during one year, — to wit, from the seventh day of December, 1869 (at twelve o'clock at noon), until the seventh day of December, 1870 (at twelve o'clock at noon), — the said loss or damage to be estimated according to the actual cash value of the said property at the time the same shall happen ; and to be paid within sixty days after due notice and proof thereof made by the insured, in conformity to the conditions annexed to this policy, unless the property be replaced by similar property of equal value and goodness, or the company have given notice of their intention to rebuild or repair the damaged premises."

Also the following conditions : —

" 9. Persons sustaining loss or damage by fire shall forthwith give notice thereof in writing to the company, or its agent, and as soon after as possible they shall deliver as particular an account of their loss and damage as the nature of the case will admit, signed with their own hands. And they shall accompany the same with their oath or affirmation, declaring the said account to be true and just; showing also the ownership of the property insured ; what other insurance, if any, existed on the same property, and giving a copy of the written portion of the policy of each company ; what was the whole cash value of the subject insured ; what was their interest therein ; in what general manner (as to trade, manufactory, merchandise, or otherwise) the building insured or containing the subject insured, and the several parts thereof, were occupied at the time of the loss, and who were the occupants of such build-

ing; and when and how the fire originated, so far as they know or believe."

"13. It is furthermore hereby expressly provided, that no suit or action of any kind against said company, for the recovery of any claim upon, under, or by virtue of this policy, shall be sustainable in any court of law or chancery, unless such suit or action shall be commenced within the term of twelve months next after any loss or damage shall occur; and in case any such suit or action shall be commenced against said company after the expiration of twelve months next after such loss or damage shall have occurred, the lapse of time shall be taken and deemed as conclusive evidence against the validity of the claim thereby so attempted to be enforced."

By an act of the general assembly of Maryland, passed at the January session, 1867, the defendant in error was chartered for the purpose of carrying on the business of warehousemen and forwarders in the city of Baltimore. It was "expressly prohibited from buying or selling any goods, wares, or merchandise, or other property, as dealers or on commission," but was authorized to receive and collect the usual and customary rates of dockage, wharfage, storage, and lighterage on all goods deposited with it, which, together with all charges and expenses incurred for labor or otherwise in the receipt, delivery, or custody of such goods, was made a lien thereon.

The tenth section of the charter was as follows: —

"The receipts, warrants, or warehouse certificates issued by this corporation for goods, wares, and merchandise in their possession or under their control, shall, in all cases, be signed by the president or vice-president and secretary of the corporation, and attested by the corporate seal; and copies thereof shall be registered in two books kept for that purpose, one of which books shall be kept by each of the officers whose signatures are to be affixed as aforesaid, which books shall be at all times open for the inspection of dealers with said corporation. The said receipts, warrants, or certificates may be transferred by indorsement thereof; and any person to whom the same may be transferred shall be deemed and taken to be the owner of the goods, wares, and merchandise therein specified, so far as to give validity to any pledge, lien, or transfer made or created by such person or persons; but no property shall be delivered except on surrender and cancellation of said original receipt, warrant, or certificate. Every such receipt, warrant, or ware-

house certificate shall contain on its face a notice that the property mentioned therein is held by this corporation as bailees only, and is not insured by this corporation."

The charter was, in 1870, amended so as to authorize the corporation "to make advances upon all goods, wares, merchandise, or other property which may be received by or stored with it."

It was admitted at the trial, that, on the 18th of July, 1870, State tobacco warehouse No. 2 was destroyed by fire; that, at the time of the fire, property was stored by the following persons, in accordance with receipts given by the defendant in error to them respectively, of which the subjoined is a specimen : —

### *Notice.*

The property mentioned in this receipt is held by this corporation as bailees only, and is not insured by this corporation.

BALTIMORE WAREHOUSE COMPANY.

Incorporated 1867.

No. 1168.]    BALTIMORE, May 24, 1870.

Marks.
× Q.

EXPENSES.
Storage 25c. per mo.
Labor . . .
Cooperage . .
Gauging. . . .
Weighing . .
Elevator. . .
Commission .
Advances . .

Received by the Baltimore Warehouse Company, in store at No. 2 tobacco warehouse, from Hough, Clendening, & Co., one hundred and nine bales cotton, to be delivered according to the indorsement hereon, but only on the surrender and cancellation of this receipt, and on the payment of the charges payable thereon.

JAMES HOOPER, *President.*
JAMES B. EDWARDS,
*Secretary and Registrar.*

{ BALT'O. WAREHOUSE CO. SEAL. }

1168.

Copy.]    BALTIMORE,    18  .

Deliver to the order of    the within-described merchandise.

(Signed)    HOUGH, CLENDENING, & Co.

Witness :

| | | |
|---|---|---|
| Hough, Clendening, & Co., cotton. | | $52,863.00 |
| Hawkins, Williamson, & Co., " | | 26,861.16 |
| Elliott Bros., " | | 8,188.81 |
| McCloud & Co., " | | 1,862.35 |
| F. L. Brauns & Co., " | | 2,888.00 |
| W. B. Hooper, " | | 320.97 |
| F. W. Beck & Co., tobacco | | 6,000.00 |
| Total | | $98,984.29 |

That all of said property was destroyed by fire on the 18th of July, 1870, except that embraced in a salvage statement made by a committee appointed by the underwriters, and signed by George B. Coale for the committee.

Previously to and at the time of said fire, the defendant in error held a policy, substantially in the same form as that now in suit, issued by the Associated Firemen's Insurance Company of Baltimore, in the sum of $10,000. The following policies in the names of other parties as assured, covering only specific portions of said property hereinafter mentioned, were in force, viz. : —

On the property stored by Elliott Bros., three policies of the following companies, viz., in name of Elliott Bros. : —

| | |
|---|---:|
| W. H., Potomac Ins. Co. for . . . . . . . | $14,000 |
| W. H., Peabody      „      „   . . . . . . . | 3,500 |
| W. H., Royal        „      „   . . . . . . . | 3,400 |
| | $20,900 |

On the property stored by F. W. Beck & Co. policies in their name as assured in —

| | |
|---|---:|
| W. H., The People's Ins. Co. for . . . . . . | $6,000 |

On that of Hough, Clendening, & Co. in their name as assured : —

| | |
|---|---:|
| W. H., The Hartford Ins. Co. for . . . . . . . | $3,500 |
| W. H., „ Franklin    „  . „ . . . . . . | 3,500 |
| W. H., „ People's    „     „ . . . . . | 2,500 |
| W. H., „ Potomac     „     „ . . . . . | 900 |
| W. H., „ Peabody     „     „ . . . . . . . | 6,000 |
| W. H., „ City        „     „ . . . . . . | 7,700 |
| W. H., „ Washington „      „ . . . . . . | 7,300 |
| W. H., „ Atlantic (1 $3,500 and 1 for $6,000)= | 9,500 |
| W. H., „ Consolidated Ins. Co. for . . . . | 12,100 |
| W. H., „ Home Ins. Co. of Baltimore for . . | 6,000 |
| W. H., „ Citizens'  „     „     „     „ . . | 1,400 |

Said last-mentioned policies covered 676 bales of cotton, if the two $6,000 policies of the Peabody and Atlantic were each on 110 separate bales, and 566 bales, if they both were only the same 110 bales, and that said cotton was worth at the time of the fire $78.32 per bale.

On the property stored by Hawkins, Williamson, & Co. in their name as assured : —

Royal Ins. Co. for . . . . . . . . . . . . $10,000
Western   „   „   . . . . . . . . . . . .   6,500
W. H., Connecticut Ins. Co. for . . . . . . 16,000
W. H., Peabody         „   „   . . . . . . .  5,000
W. H., Hartford         „   „   . . . . . . .  3,000
W. H., Home Ins. Co. of Baltimore for . . . .  5,000

On the property stored by F. L. Brauns & Co. in their name as assured : —

People's Ins. Co. for . . . . . . . . . . . $2,888

It was also admitted that the defendant in error had advanced to the owners of said property, on the deposit thereof, the sums hereinafter named, and that it held the said property as security therefor, viz. : —

To Hough, Clendening, & Co. . . . . . . . . $48,720
„ Hawkins, Williamson, & Co. . . . . . . 16,800
„ McCloud & Co. . . . . . . . . . . . .  1,480
„ F. W. Beck & Co. . . . . . . . . . . .  4,234
                                          ————————
                                           $71,234

It was further admitted, that all of the before-mentioned policies marked "W. H." were made payable on their face to the defendant in error, in these words : "Loss, if any, payable to the Baltimore Warehouse Company," and delivered to and held by it as additional security for advances at the time of the making of said advances.

Among other points on which no agreement between the underwriters and the insured could be reached, was the question whether the general policy of the plaintiff in error and that of the Associated Firemen's Insurance Company were liable to contribute with the specific policies for losses on the property covered by the latter.

Cases involving this question were instituted in the State courts. Among others, was one by Hough, Clendening, & Co., to the use of the warehouse company, on a specific policy against the People's Insurance Company.

For the purpose of awaiting the decision by the State courts of this question of contribution, and also of the question whether the policies of the Peabody and Atlantic companies covered the same lot of one hundred and ten bales of cotton, or two lots each of that number, amounting together to two hundred

and twenty bales, the plaintiff entered into a written agreement with the defendant, extending, to a named day, the period within which suit might be brought on the policy sued on in this case. The final decision of these questions not having been made within the period prescribed in the first agreement, another agreement was made, providing for a further extension. Pending this state of facts, the defendant in error presented to the plaintiff in error preliminary proof as to, and received payment for, twenty-four bales of cotton, which were not covered by any of the specific policies, nor affected by any of the questions involved in the cases pending in the State court, nor otherwise the subject of dispute. When this payment was made, the plaintiff in error asked to have its policy surrendered. Hooper, the president of the defendant in error, refused to surrender it, saying that he wanted to retain it to cover all losses, whether then seen or not, — all against which it might turn out, from the decision of the cases then pending, or from other causes which could not then be anticipated or seen, that the defendant in error was not otherwise protected; adding that some of the companies which had issued specific policies were already contending that the policies issued by the plaintiff in error and the Associated Company were bound to contribute to the losses covered by the specific policies. He also then made claim for the one hundred and ten bales of cotton, if not covered by the policies of the Peabody and Atlantic, on the ground that the policy in suit was intended to cover all losses of every kind which could not be seen or specified. Coale, the agent of the plaintiff in error, denied that it could be held responsible for any other loss than that of the twenty-four bales. No final settlement was made. But, after consulting with the home officers of his company, he settled for the twenty-four bales, allowed Hooper to retain its policy, and took a receipt for the special settlement then made. No objection to the want of preliminary proof as to the claims retained was made, until a few days before the institution of this suit. The plaintiff in error denied its liability on these claims, until the decision of the State court in one of the cases pending in it; after which Coale, its agent, admitted that its liability was thereby established, and made various calculations of the amount thereof.

Barney, who was elected president of the defendant in error after the fire, and after the settlement between Hooper and Coale, became convinced that the policies of the Peabody and Atlantic companies covered only the same lot of one hundred and ten bales, and settled with these companies on that basis. It was not sought at the trial to bind the plaintiff below by that settlement; but the question, whether one hundred and ten bales were uncovered by specific policies or not, was left as an open one to the jury for their decision.

At the trial, the above-mentioned facts having been all proved, and the defendant in error having proved that Frank P. Clark was a lawyer by profession; that he had occupied himself in making insurance adjustments, as a specialty; and that, in 1870, he had devoted himself principally to that business, — offered as part of his evidence several statements or adjustments made by him as illustrations of the results arrived at upon the different theories of adjustment therein adopted. The plaintiff in error objected to their admission in evidence; but the court overruled the objection, and allowed them to go to the jury, only for the purpose of assisting them in calculating the amount of liability of the plaintiff, upon the several hypotheses of facts stated in said calculations, with the express instruction, that they were admitted only as calculations to aid the jury, and were in no way binding on them. To this ruling the plaintiff in error excepted.

The plaintiff in error afterwards offered in evidence a letter, which was admitted to be part of a negotiation for a compromise; offering to read only a portion of it, if the whole was objected to. The defendant in error objected to the reading of any part of it. The objection was sustained, and the plaintiff in error excepted.

The plaintiff below thereupon submitted several prayers to the court for instruction to the jury, which said prayers were refused, except the fifth, which was as follows: —

5th, If the jury shall find, from the evidence, that Hooper, the president of the plaintiff, at the time of receiving from the defendant the moneys receipted for on the said policy for the losses mentioned therein, was requested by Coale, the defendant's agent, to surrender the said policy, but refused to

do so, and notified Coale that he retained the said policy in order to assert, against the defendant thereafter, any claims thereunder not then known to him, but which might thereafter appear; and that said Coale accordingly left said policy in the hands of Hooper, and wrote and signed the receipt written thereupon, and altered the usual receipt of the company to conform thereto in the manner testified to by said Coale, and sent to the defendant a copy of said receipt as altered, with the memorandum thereon proven by said Coale;

And if the jury shall further find, that said Coale did not, nor did the defendant, make any objection to the retention of said policy by said Hooper, for the purpose aforesaid, but, on the contrary, assented thereto, and that said Coale simply denied and protested that the defendant was not liable, and would not and did not recognize or concede its liability under the terms of said policy for any other losses than those paid and receipted for as aforesaid;

And shall further find, that the agreements for the waiver of the thirteenth condition of said policy, which have been given in evidence, were executed by the defendant, for the purpose of giving to the plaintiff a continuing right to assert by suit its claims reserved by Hooper, as aforesaid, pending litigation in the State courts, involving the legal principles on which the respective rights of the parties under said policy might depend; and that no suggestion or intimation of any defence to said claims on the ground of defect or failure of preliminary proof or notice under the ninth condition of insurance, was made by defendant or its said agent, until a short time before the institution of this suit, and after ineffectual efforts between the parties to settle the claims of the plaintiff under said policy upon their merits, then —

The jury are entitled, from such facts, with the other facts in the case, to find that the defendant waived the compliance by the plaintiff as to such reserved claims, with the fifteenth paragraph of the ninth of the conditions of insurance attached to the policy.

And if the jury find such waiver as aforesaid, then the failure to offer such preliminary proof is no bar to the plaintiff's right to recover in this suit.

The defendant below, at the same time, presented the following seven prayers, and prayed the court to give to the jury the several instructions therein asked for : —

1. The policies obtained by Hough, Clendening, & Co. upon their cotton, and made payable to the Baltimore Warehouse Company, being for a different assured, were upon a different interest from that covered by the policy now in suit ; and the latter is not bound to contribute to any losses for which the former are liable.

2. If the jury find, that, in the course of dealing between the Baltimore Warehouse Company and its depositors, the latter, before receiving advances upon goods stored, were required to insure the same to an amount not less than the sum advanced, and that for the purpose of securing the said warehouse company the policies in such cases were made payable to the warehouse company, and were delivered to them at the time of procuring such advances; and shall further find, that the two policies of $6,000 each, issued on the twenty-fourth day of May, 1870, by the Atlantic and Peabody Insurance Companies, were obtained by Hough, Clendening, & Co., with knowledge on the part of said companies that they were intended to secure the warehouse company for advances, and that Hough, Clendening, & Co. then took them to the said warehouse company, and that the latter received them without notice to the said warehouse company of the circumstances under which they were obtained ; and that, upon the faith thereof, the said warehouse company, their officers believing that each policy insured the full quantity mentioned in the same, and that the two together covered two hundred and twenty bales, thereupon advanced to Hough, Clendening, & Co. a sum of money larger than would have been advanced but for the existence of both said policies, and the belief that they were independent of one another, — then the said Atlantic and Peabody companies were respectively bound as between them and the said warehouse company by the representations contained in the respective policies, and could not limit their responsibility to a joint responsibility for one hundred and ten bales of cotton; but were each liable, as separate insurers, to the amount of one hundred and ten bales.

3. If the jury shall find from the evidence, that, from the time of the fire of July 18, 1870, until after the 25th of June, 1872, no claim or demand was made by the plaintiff on the defendant for any loss by reason of said fire, except for the twenty-four bales of cotton mentioned in the written proofs and settlement offered in evidence, and for an alleged liability of the defendant, under the policy declared on, for contribution with the special policies set forth in the agreement filed in this case, — then there is no evidence before the jury from which they can infer a waiver of preliminary proof, on the part of the defendant, in regard to any other claim under the policy declared on, except the claim for contribution with the said special policies.

4. By the ninth condition of the policy upon which this suit is brought, it was made necessary for the insured, after the fire, forthwith to give notice of their loss to the defendant, and as soon as possible thereafter to deliver as particular an account of their loss and damage as the nature of the case admitted of, and to accompany the same with proof as therein provided; and no acts or declarations of the agent, Coale, subsequent to the 10th of October, 1870, are admissible to show waiver by the defendant of said condition.

5. In determining the question, whether there has been a waiver of preliminary proof, the jury cannot consider declarations of the defendant's agent, Coale, made to parties other than the officers or agents of defendant, denying the defendant's liability to the plaintiff for any loss whatever beyond that of the twenty-four bales of cotton which were included in the settlement offered in evidence.

6. There is no evidence in this case of any waiver, on the part of the defendant or of its agent, in such manner as to bind them, of notice of loss and preliminary proof as to the one hundred and ten bales of cotton alleged to have been left without specified insurance by reason of the Atlantic and Peabody policies of $6,000 being upon the same one hundred and ten bales.

7. That, if the jury shall find from the evidence and under the instructions of the court that, at the time of the fire of July 18, 1870, there were one hundred and ten bales of cotton

deposited by Hough, Clendening, & Co. in the warehouse of the plaintiff, which were not covered by any of the special policies taken out by said Hough, Clendening, & Co., and made payable to plaintiff, and that the plaintiff had notified the said Hough, Clendening, & Co. that they themselves must insure all cotton deposited by them; and if the jury shall find that there was, on the part of the defendant, a waiver of preliminary proof in regard to the loss on said one hundred and ten bales, and that the plaintiff is entitled to recover on account of said loss, — then the amount the said plaintiff is entitled to recover on account of said one hundred and ten bales should be two-thirds of plaintiff's own loss by reason of the damage of said bales by said fire; and, in order to ascertain the plaintiff's own loss on said one hundred and ten bales, the salvage thereon received by the plaintiff, and the amount due on all the said special policies, should be deducted from the total amount advanced by the plaintiff to the said Hough, Clendening, & Co.

The court rejected all of said prayers of the defendant, excepting the fifth, and instructed the jury as follows : —

If the jury shall find, from the evidence in this case, that, at the time of the fire of July 18, 1870, there were one hundred and ten bales of cotton in the warehouse of plaintiff, deposited by Hough, Clendening, & Co., which were not covered by any of the special policies taken out by said depositors; and that on said one hundred and ten bales the plaintiff had made advances, which were unpaid at the time of the fire; and shall further find for the plaintiff as to the waiver of preliminary proof, under the fifth prayer of the plaintiff, which is granted by the court, — then the plaintiff is entitled to recover in this action for the two-thirds of all loss or damage to said one hundred and ten bales, to the extent of its advances as aforesaid.

And if the jury shall find, from the evidence, that there was other cotton deposited by depositors in plaintiff's warehouse, and which was covered by special policies of insurance given in evidence in this case, and upon which plaintiff had made advances, — then the said plaintiff is entitled to recover also for the two-thirds of all loss or damage to said cotton, to the extent of its advances on the same, less the amount which the jury may find to be due from said special policies made payable to

the said plaintiff, each of said special policies contributing to the loss on the cotton insured by it with the general policies held by the plaintiff.

The defendant thereupon excepted to the rejection by the court of its first, second, third, fourth, sixth, and seventh prayers, and to the granting of the fifth prayer of the plaintiff, and to the instruction given to the jury in accordance therewith, and also to the court's instructions, and severally to each proposition in said instruction contained.

The jury found a verdict for the plaintiff below for $16,585.73, and judgment was rendered thereon; whereupon the defendant below brought the case here, and assigns for error, —

1st, The admission of the statements or adjustments of the witness Clark.

2d, The refusal to admit the letter from Barney to Coale.

3d, The admission of the record of the suit of *Hough, Clendening, & Co.* v. *People's Ins. Co.*

4th, The granting of plaintiff's fifth prayer.

5th, 6th, 7th, 8th, 9th, 10th, The rejection of the defendant's second, third, fourth, sixth, and seventh prayers.

11th and 12th, The first and second paragraph of the charge to the jury, as given.

*Mr. A. W. Machen* and *Mr. Thomas Donaldson* for the plaintiff in error.

The plaintiff in error is not bound to contribute to the payment of losses for which the policies of Hough, Clendening, & Co. are liable. They were for a different assured, and upon a different interest. There was, therefore, no double insurance. The memorandum upon their face, the "loss, if any, payable to the Baltimore Warehouse Company," does not affect the principle; but is simply "a mode of appointing that the loss of the party assured shall be paid by the company to such third person." *Bates* v. *Equitable Ins. Co.*, 10 Wall. 33; *Grovesnor* v. *Atlantic Fire Ins. Co.*, 17 N. Y. 391; *Hale* v. *Mech. Mut. Fire Ins. Co.*, 6 Gray, 172; *Fogg* v. *Middlesex Manuf. Co.*, 10 Cush. 346; *Macomber* v. *Cambridge Mut. Ins. Co.*, 8 id. 135; *Young* v. *Eagle Fire Ins. Co.*, 14 Gray, 153; *State Mut. Fire Ins. Co.* v. *Roberts*, 31 Penn. 438; *Loring* v. *Manuf. Ins. Co.*, 8 Gray, 28; *Woodbury Savings Bank* v. *Charter Oak Ins. Co.*,

29 Conn. 374; *Turner* v. *Quincy Mut. Fire Ins. Co.*, 109 Mass. 568; *Tallman* v. *Atlantic F. & M. Ins. Co.*, 29 How. Pr. 71.

The decision of the Court of Appeals of Maryland in *Hough, Clendening, & Co.* v. *People's Ins. Co.*, 36 Md. 398, cannot bind the plaintiff in error, which was in no sense a party to that case, nor can it affect the decision of this court in the present suit. 1 Greenl. Ev., sect. 523; *Carpenter* v. *Prov. & Wash. Ins. Co.*, 16 Pet. 495, 511.

The circumstance that that court, long after this contract was entered into and the occurrence of the loss, put an erroneous construction on another contract between other parties, cannot alter the meaning of this. *Martineau* v. *Kitching*, L. R. 7 Q. B. 436; *North Brit. Ins. Co.* v. *Moffatt*, L. R. 7 C. P. 25; *Lee* v. *Adsit*, 37 N. Y. 78.

The respective policies of the Atlantic and Peabody Insurance Companies each appearing to be on one hundred and ten bales of cotton, without indicating any identity of subject-matter, and there being in the warehouse two distinct lots to which they were respectively applicable, and having been accepted and acted upon by the warehouse company as covering distinct lots, on both of which it made advances, the former companies knowing that the policies were made to cover advances, — it was not competent for them to contradict the representations contained in their respective policies. Each of said companies was liable, as a separate insurer, to the amount of one hundred and ten bales.

No suggestion of a claim for a loss on one hundred and ten bales, as uninsured by any particular policy of any depositor, having been made until after the lapse of some two years from the time of the loss, there was no evidence from which the jury could infer any waiver of preliminary proof in regard to said one hundred and ten bales.

The declarations of the agent, made after the lapse of the period within which preliminary proof should have been made, could not have the effect of a waiver of such proof as against the company. 1 Tayl. Ev., sects. 539, 540.

The plaintiff's fifth prayer, which was granted, is liable to special objection, because the facts selected, if found by the jury, did not authorize a finding of a waiver of preliminary

proof, — certainly not as to all the claims of loss now made, and not as we suppose to any of them; and because it was improper to leave to the jury the construction of the written agreements referred to, and the determination of their effect.

The statements of calculations and adjustments made by the witness Clark, and offered in evidence, were not proper evidence to go to the jury; being both irrelevant and calculated to mislead it.

The part of Barney's letter offered in evidence was competent, and should have been admitted. A statement accompanying an offer of compromise, even if intended as an inducement to a compromise, is admissible. *Seldner* v. *Smith,* 40 Md. 602.

*Mr. John H. Thomas, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

The most important question in this case relates to the proper construction of the defendants' policy of insurance. It is contended on their behalf that it covered only the warehouse company's interest in the goods contained in the warehouse. If this is the true meaning of the contract, the instruction given by the Circuit Court to the jury was erroneous. If, on the other hand, the policy covered the merchandise itself, and not merely the interest which the warehouse company had therein, there is no just ground of complaint of the charge of the circuit judge. Blanket and floating policies are sometimes issued to factors or to warehousemen, intended only to cover margins uninsured by other policies, or to cover nothing more than the limited interest which the factor or warehouseman may have in the property which he has in charge. In those cases, as in all others, the subject of the insurance, its nature and its extent, are to be ascertained from the words of the contract which the parties have made. It is as true of policies of insurance as it is of other contracts, that, except when the language is ambiguous, the intention of the parties is to be gathered from the policies alone. There are cases in which resort may be had to parol evidence to ascertain the subject insured; but they are cases of latent ambiguity. So, in the construction of other contracts, parol evidence is admissible to explain such ambiguities. In this particular, the rule for the construction of all written con-

tracts is the same. Lord Mansfield said long ago that courts are always reluctant to go out of a policy for evidence respecting its meaning. *Loraine* v. *Tomlinson*, Doug. 564. And so are the authorities generally. *Astor* v. *Union Ins. Co.*, 7 Cow. 202; *Murray* v. *Hatch*, 6 Mass. 465; *Levy* v. *Merrill*, 4 Greenl. 480; *Baltimore Fire Ins. Co.* v. *Loney*, 20 Md. 36; Arnould on Ins. 1316, 1317, and notes; 2 Greenl. on Ev. 377. It is no exception to the rule, that, when a policy is taken out expressly " for or on account of the owner " of the subject insured, or " on account of whomsoever it may concern," evidence beyond the policy is received to show who are the owners or who were intended to be insured thereby. In such cases, the words of the policy fail to designate the real party to the contract, and, therefore, unless resort is had to extrinsic evidence, there is no contract at all. *Finney* v. *Bedford Ins. Co.*, 8 Met. 348.

Turning, then, to the policy issued to the plaintiff below, and construing it by the language used, the intention of the parties is plainly exhibited. Its words are, The Home Insurance Company " insure Baltimore Warehouse Company against loss or damage by fire, to the amount of $20,000, on merchandise hazardous or extra-hazardous, their own or held by them in trust, or in which they have an interest or liability, contained in " a certain described warehouse. There is nothing ambiguous in this description of the subject insured. It is as broad as possible. The subject was merchandise stored or contained in a warehouse. It was not merely an interest in that merchandise. The merchandise of the warehouse company, owned by them, was covered, if any they had. So was any merchandise in the warehouse in which they had an interest or liability. And so was any merchandise which they held in trust. The description of the subject must be entirely changed before it can be held to mean what the insurers now contend it means. If, as they claim, only the interest which the warehouse company had in the merchandise deposited in their warehouse was intended to be insured, why was that interest described as the merchandise itself? Why not as the assured's interest in it? Throughout the policy, wherever the subject intended to be insured is spoken of, it is described, not as a partial interest, not as a

mere lien for advances and charges upon the goods held in storage, but as the property itself, whatever might be the existing rights to it.   Thus the insurance company covenanted to make good to the assured all such loss or damage, not exceeding the sum insured, as should happen by fire " to the property as above specified."   What that specification was, we have seen. The policy also contained a provision that, in case of fire, the " property" destroyed might be replaced by similar " property" of equal value and goodness.   There are other like designations.   Nowhere is any less interest in the goods insured alluded to than the entire ownership.   The words of the policy are not satisfied if their import be restrained, as the plaintiff in error seeks to confine it.   The parties to whom the policy was issued were warehouse-keepers, receiving from various persons cotton and other merchandise on deposit.   They were empowered by their charter to receive bailments and to make charges against the bailors for handling, labor, and custody.   They were also authorized to make advances upon the goods deposited with them, and their charges, expenses, advances, and commissions were made liens upon the property.   They had, therefore, an interest in the merchandise deposited with them, which they might have caused to be specifically insured.   It was also at their option to obtain insurance upon the entire interest in the merchandise, whether held by them or by the depositors.   Nothing in their charter forbids such insurance. It is undoubtedly the law that wharfingers, warehousemen, and commission-merchants, having goods in their possession, may insure them in their own names, and in case of loss may recover the full amount of insurance, for the satisfaction of their own claims first, and hold the residue for the owners.   *Waters* v. *Monarch Assur. Co.*, 5 Ell. & Bl. 870 ; *London and North-western Railway Co.* v. *Glyn*, 1 Ell. & Ell. Q. B. 652; *DeForest* v. *Fulton Ins. Co.*, 1 Hall, 136 ; *Siter* v. *Moritz*, 13 Penn. St. 219. Such insurance is not unusual, even when not ordered by the owners of goods, and when so made it inures to their benefit. And such insurance, we must hold, the warehouse company sought and obtained by the policy of the plaintiff in error. The words " merchandise held in trust" aptly describe the property of the depositors.   The warehouse company held mer-

chandise in trust for their customers, not, it is true, as technical trustees, but as trustees in the sense that the goods had been entrusted to them.   They were not empowered by their charter to hold property under technical trusts cognizable only in equity.   Hence, when they sought insurance of merchandise held by them in trust, it must have been intended of such as they held in trust, — in a mercantile sense, goods entrusted to them by the legal owners.   That such is the meaning of the words as used in this policy we cannot doubt.   And such has been held by courts of the highest authority to be the meaning of similar words in fire policies.   In *Waters* v. *Monarch Fire and Life Assurance Company*, above cited, the policy was issued to persons described as corn and flour factors, who were, in fact, flour-merchants, warehousemen, and wharfingers.   It was on goods in their warehouses, and on goods in trust or on commission therein.   The assured had in their warehouses goods belonging to their customers, deposited with them as warehouse-keepers, and on which they had a lien for charges for cartage and warehouse rent, but no further interest of their own.   They made no charge to the customer for insurance, nor was the customer informed of the existence of the policy.   It was ruled that the goods were held in trust, within the meaning of the policy; and, there having been a destruction by fire, that the assured were entitled to recover their entire value, applying so much as necessary to cover their own interest, and holding the remainder as trustees for the owners.   Lord Chief Justice Campbell said, " It was not intended to limit the policy to the personal interest of the plaintiff, for in this and all other floating policies the promise is to make good the damage to the goods."   A similar ruling was made in the *London and North-western Railway Co.* v. *Glyn, supra*.   There the plaintiffs, who were common carriers, had obtained insurance of goods against fire, in a company of which the defendant was treasurer.   The policy declared £15,000 to be insured " on goods their (the plaintiffs') own and in trust as carriers " in a certain warehouse, and it was stipulated that the company were to be liable to make good to the " assured " all loss which they, " the assured," should suffer on the property therein particularized. In an action on the policy, it was held, that, to the extent of

£15,000, the whole value of the goods in the warehouse in the plaintiffs' possession was insured by it, and not merely their interest in the goods ; and that the plaintiffs would be regarded as trustees for the owners of the amount thus recovered, after deducting their charges as carriers.

In opposition to this construction of the policy now before us, our attention has been called by the plaintiffs in error to a provision in the charter of the warehouse company, and to the notice accompanying the receipts they gave for the merchandise delivered to them in storage. The tenth section of their charter, after requiring that the receipts, warrants, or warehouse certificates issued by the corporation for goods, wares, and merchandise in their possession, should be signed by the president or vice-president and secretary, and attested by the corporate seal, after requiring that copies should be registered, and declaring that they should be transferable by indorsement, enacted that every such receipt, warrant, or warehouse certificate should contain on its face a notice that the property mentioned therein was held by the corporation as bailees only, and was not insured by the corporation. Accordingly, all the warehouse receipts did contain such notices. But we are unable to perceive how these facts can have any bearing on the proper construction of the policy. The company was not prohibited by its charter from obtaining insurance to their full value of the goods left with them in bailment. At most, the requirement of the charter was that they should not themselves become insurers. And the notice required to be given to the bailors meant no more than that neither the receiving of the goods nor the certificate of receipt amounted to a contract of insurance. It would be straining the language of the notice most unwarrantably, were we to treat it as amounting to an engagement that the company would not obtain insurance of the property from some corporation authorized to insure.

Without pursuing this discussion further, we have said enough to vindicate our opinion that the policy upon which this suit was brought covered the merchandise held by the warehouse company on storage, and not merely the interest of the bailees in that property. It follows, necessarily, that there was double insurance. The policy issued to the warehouse company, and

those obtained by the depositors of the merchandise, covered the same property, and they were for the benefit of the same owners.    The persons assured were the same; for if the policies taken out by Hough, Clendening, & Co. were upon their goods, notwithstanding the memorandum that the loss, if any, was payable to the Baltimore Warehouse Company, as may be conceded was the case, so was the policy now in suit.    The insurers are liable, therefore, *pro rata*, each contributing proportionately.    It follows that the plaintiffs in error have no reason to complain of the refusal of the court below to affirm their first and seventh points, and none to complain of the instructions given to the jury respecting the extent to which the plaintiffs were entitled to recover, if they could recover at all.

The next question presented by the record, which we propose to consider, is raised by the fourth, the seventh, eighth, and the ninth assignments of error.    Those assignments complain of the affirmance of the plaintiffs' fifth point, and of the disaffirmance of the defendants' third, fourth, and sixth.    Beyond doubt it was a question for the jury whether furnishing preliminary proof of loss was waived by the defendants or by their authorized agent, if there was any evidence of waiver to be submitted to them.    And we think there was such evidence.    The defendants were an insurance company of the State of New York. By the act of the Maryland legislature, which empowered them to do business in Maryland, the agent of the company was required to have authority " from the parent office or offices to settle losses, without the interference of the officer or officers of the said parent office or offices."    Mr. Coale was their agent, and clothed with such authority.    He could, therefore, waive the presentation of preliminary proofs, and his waiver was binding on his principals.    *Franklin Fire Ins. Co.* v. *Chicago Ice Co.*, 36 Md. 102.    A waiver may be proved indirectly by circumstances as well as by direct testimony.    If, after the time for presenting preliminary proofs had gone by, Mr. Coale acted and spoke as if they had been presented in season; if, while resisting the claim upon his company, he placed his objections entirely upon other grounds, and never alluded to any failure of the plaintiffs to exhibit preliminary proofs until those other grounds were apparently swept away; if, after making a payment

for a loss of twenty-four bales of cotton, and after he was notified that the policy would be retained in order to assert afterwards other claims upon it, he expressly waived another one of its conditions, for the purpose of giving to the plaintiffs a continuing right to bring a suit, — the jury might well have inferred that the condition of giving notice of the loss and making preliminary proof had been waived.   Such conduct on his part was consistent with a conclusion that such a waiver had been made. It is difficult to account for it, if there had been none.   Yet all this evidence, and more, was before the jury.   These assignments of error, therefore, cannot be sustained.

The sixth assignment of error requires but a single remark. We do not see that the evidence warranted the hypothesis upon which the defendants' second prayer was based; but if it did, it would be impertinent to the case.   If the plaintiffs were mistaken in regard to their rights as against other insurers, such a mistake cannot affect their claim on the defendants' policy.

The tenth assignment has already been shown to be unfounded, by what we have heretofore said.

It remains only to notice some rulings of the Circuit Court in respect to offers of evidence.   The court admitted in evidence, notwithstanding objection by the defendants, several statements or plans of adjustment of the loss, made by an expert, and founded upon different theories of the law.   They were not admitted as evidence of the facts stated in them, or as obligatory upon the jury, but only for the purpose of assisting the jury in calculating the amount of liability of the defendants upon the several hypotheses of fact stated in them, and stated only hypothetically.   It is impossible that the defendants could have been injured by their reception, and without some such assistance no intelligent verdict could have been rendered.   The jury was left free to accept either hypothesis, or reject them all. We think there was no error in admitting the calculations.

Nor was there error in receiving the record of the suit of *Hough, Clendening, & Co.* v. *People's Ins. Co.*, in the Maryland courts, under the circumstances of the case.   The present parties had agreed to extend the time within which this suit might be brought until the decision of the questions involved in the suit of Hough, Clendening, & Co.   The record of that

suit, therefore, was evidence to show its termination. But if not, it was merely irrelevant, and it is not shown that it tended in the least to mislead the jury. A judgment is not to be reversed because evidence was admitted at the trial which could have had no bearing upon the issue, unless it appears that it was misleading in its tendency.

The only remaining assignment of error is that the Circuit Court would not receive in evidence any part of a letter written by the president of the warehouse company to Mr. Coale, the defendants' agent. The letter was an offer of compromise, and as such, upon well-recognized principles, it was inadmissible. And it contains no statement which can be separated from the offer and convey the idea which was in the writer's mind. The court was clearly right in rejecting it.

*Judgment affirmed.*