Robert G. Clinckett, Respondent, *v.* Manuel G. Casseres, Appellant.

Second Department, May 24, 1923.

Fraud and deceit — complaint is sufficient which alleged that by false and fraudulent representations defendant, part owner and general manager of steamship company, induced plaintiff's assignor to refrain from prosecuting claim against company and that company subsequently went into bankruptcy and plaintiff suffered loss — defenses based on failure of shipper to file claim and commence suit against carrier within time limited by bill of lading are sufficient — defense that vessel was seaworthy is sufficient — defense that shipper could have proceeded in rem against vessel is insufficient — defense that plaintiff did not have legal capacity to sue is insufficient — reallegation in defenses by reference to allegations previously pleaded violates Rules of Civil Practice, rule 90.

The complaint in an action for fraud and deceit is sufficient which alleges that the plaintiff's assignor shipped coffee from a foreign port to a firm in New York city as commission merchants; that the shipment was short on arrival about fifty-four bags; that the plaintiff's assignor threatened suit; that the defendant, the owner of one-half of the capital stock of the steamship company and its vice-president and general manager, for the purpose of inducing plaintiff's assignor not to prosecute the claim which was valid and enforcible, stated that his company would not pay the claim until the dock receipts were furnished, that the company was insured against liability for losses of that character but could not recover from the insurers without the dock receipts, and that his company was anxious to adjust the claim; that the several representations were false and fraudulent and were made with the intent of inducing plaintiff's assignor to withhold suit; that the steamship company actually collected insurance and used the same; that at the time the representations were made the steamship company was solvent and a judgment against it would have been paid; and that subsequently it went into bankruptcy.

Inasmuch as shipment was *from* a foreign port to the port of New York, the defense that plaintiff's assignor did not present his claim against the steamship company and did not commence suit against it within the time limited in the bill of lading is sufficient in law since if there was no liability on behalf of the steamship company the plaintiff has not been damaged by any false representations.

Likewise, the defense that the steamship was in all respects seaworthy, properly equipped and manned and that the owners had used due diligence to make the vessel seaworthy, is sufficient in this action.

The defense that the plaintiff's assignor or the plaintiff now has and at all times since shipment has had a right to proceed *in rem* against the steamship is insufficient and should be stricken out since the plaintiff's assignor or the plaintiff had the right to elect its remedy.

The defense that the plaintiff did not have the legal capacity to sue was properly stricken out by the trial judge upon the ground that no facts were pleaded.

The reallegation by reference as an introductory to each defense of all the prior allegations contained in the answer is a violation of rule 90 of the Rules of Civil Practice and was properly stricken out.

APPEAL by the defendant, Manuel G. Casseres, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Richmond on the 22d day of November, 1922, granting plaintiff's motion to strike out certain paragraphs of the answer as redundant, and to strike out four affirmative defenses contained in the answer as insufficient in law upon the face thereof.

The complaint is for damages sustained by reason of alleged fraud and deceit of the defendant. The following facts appear from the complaint:

The plaintiff's assignor, the Banco de Colombia (hereinafter referred to as the Bank), shipped on the 19th of August, 1919, from Cartagena in the Republic of Colombia, 2,509 bags of coffee. The shipment was consigned to the firm of Sorenson & Nielsen in the city of New York, as commission merchants and factors of the Bank, for the sale thereof in the United States. The coffee was delivered to the Caribbean Steamship Company (hereinafter called the Steamship Company) and placed upon the Steamship Company's steamship *Mohican.* Of the 2,509 bags shipped, only 2,455 bags were delivered to the consignees. Thereafter and on the 11th day of December, 1919, the consignees filed, on behalf of the Bank, in the office of the Steamship Company, a claim against the Steamship Company for $2,143.24, the value of the 54 bags of coffee that the Steamship Company had lost and failed to deliver to the consignees. Documents in support of the claim were filed at the same time.

After the claim for $2,143.24 had remained unpaid for about two years. the Bank threatened and was about to sue the Steamship Company to recover this sum unless the same were paid immediately. Thereafter, in January and March, 1922, and at various other times, the defendant Manuel G. Casseres, to induce the Bank to withhold suit upon said claim, " which the defendant knew to be valid and enforcible," stated and represented to the Bank that the Steamship Company would not pay the claim until it was furnished with the dock receipts that had been given at the steamer in Cartagena to the transportation companies which had delivered the coffee to the steamer. It was further stated and represented by the defendant that the Steamship Company was insured " against liability for losses of this character," but that it would not be able to recover from its insurers upon said claim unless it should furnish the insurers the said dock receipts, in order to satisfy the insurers that all the coffee mentioned in the bill of lading had been actually loaded upon the ship. Casseres further represented that the Steamship Company was anxious to adjust the claim,

but could not do so until the Steamship Company obtained the dock receipts from its former agents in Cartagena, and that as soon as the Steamship Company was furnished with the dock receipts " it would pay the said claim without suit."

It is alleged that the defendant Casseres was the owner of one-half of the capital stock of the Steamship Company and that he was the vice-president and general manager thereof, " the executive head of its business and having complete authority and control over every department thereof." The complaint then charges that the several representations above quoted, made by defendant, were false and fraudulent and that he made them with the intent of inducing the Bank to withhold suit upon its claim, expecting that the Bank would rely upon the representations; that in fact the Steamship Company was insured " against liability for losses " upon the said voyage of the steamship *Mohican* in an insurance association; that on November 9, 1920, the Steamship Company forwarded to its insurer the claim of the Bank for $2,143.24 with the documents submitted by the Bank in support thereof, requesting approval of the claim; that on March 3, 1921, the insurance company had approved the claim in writing and authorized the Steamship Company to pay the same; that on March 22, 1921, the Steamship Company had requested its insurer to pay it the amount of the claim; that on the thirteenth of April the insurer paid the claim in full to the Steamship Company, which used in its business the money thus collected; and that all of these facts were known to defendant when he made the false representations in January and March, 1922.

The complaint further shows that the Bank relied upon defendant's representations, believing them to be true, and that by reason thereof it failed to bring suit against the Steamship Company. Instead of commencing suit the Bank communicated with its agent in Cartagena, instructing him to have the dock receipts forwarded.

It is further alleged that in January, 1922, the Steamship Company was operating not less than eight steamers between New York, the West Indies, the Canal Zone, and Central American ports; that it had a gross income of $100,000 a month; that the Bank's claim at that time was a good and valid claim; and that if the Bank had sued the Steamship Company, as it had intended to do, it could have collected the full amount of its claim. It then appears that on May 31, 1922, a petition in bankruptcy was filed against the Steamship Company in the United States District Court for the Southern District of New York, and that it was duly adjudged a bankrupt; that its assets will be insufficient to

pay the administration expenses and the preferred claims; and that the plaintiff will receive nothing on the Bank's claim.

It is claimed in the complaint that if the insurance carried by the Steamship Company " against its liability " upon the Bank's claim were uncollected as represented by defendant, the plaintiff, after the bankruptcy, might be subrogated to the rights of the Steamship Company against its insurer and might thereafter collect its claim in full from the insurer; but the insurer having paid the claim, plaintiff's right of subrogation is lost. Prior to the commencement of the action the Bank, for a valuable consideration, duly assigned its claim to the plaintiff.

The answer of the defendant pleaded four defenses:

*First.* A paragraph of the bill of lading under which the coffee was carried, which provided: (a) If there was opportunity to discover the loss by examination, before the removal of the goods, and if this was not done there could be no liability by the carrier or the vessel; (b) if there was no opportunity to discover such loss before the removal of the goods, the carrier or the vessel should not be liable unless notice of the claim was presented within forty-eight hours after the removal of the goods; (c) the carrier or vessel should not be liable in any event unless notice of the claim should be presented in writing within thirty days after delivery of the goods to the carrier, nor unless suit should be commenced within six months after delivery of the goods to the carrier; lapse of such period of six months to be deemed a complete bar to recovery in any suit not sooner commenced; (d) nothing should be considered a waiver of this article of the bill of lading except a written express waiver signed by the carrier.

It was then alleged that the times thus limited in the bill of lading for commencement of suit had expired; that the time for filing claim for loss had also expired before the Bank actually filed its claim; that there was, therefore, no legal liability existing in favor of the Bank against the defendant at the times alleged in the complaint; and that there was no written express waiver of the provisions of the bill of lading.

*Second.* That the shipment of goods referred to in the complaint was made from a foreign port to the port of New York; that the steamship *Mohican* was in all respects seaworthy, properly equipped and manned, and that the Steamship Company and the owners of the *Mohican* had used due diligence to make the vessel seaworthy; and that the Steamship Company was not liable for any loss as alleged in the complaint, by reason of the provisions of the statutes of the United States in such case made and provided.

*Third.* That if any liability existed for loss or damage, as alleged

in the complaint, for goods shipped on the *Mohican,* the Bank now has and at all times had a right to proceed *in rem* against the steamship *Mohican* for the recovery of the same in full, and that, therefore, neither plaintiff nor the Bank has been damaged.

*Fourth.* On information and belief, that the plaintiff has not legal capacity to sue for the cause of action alleged in the complaint.

. *William F. Purdy,* for the appellant.

*Charles H. Tuttle* [*Emily C. Holt* with him on the brief], for the respondent.

KELBY, J.: ·

The order appealed from struck out each of the four defenses referred to in the statement of facts. The first three defenses were stricken out on the ground that they were " not germane " to the issues; and the fourth defense on the ground that it was a mere legal conclusion.

After the plaintiff had moved to strike out the defendant's separate defenses, the defendant served motion papers to dismiss the complaint. The parties, by written stipulation in the record, ask the court to determine whether the complaint states a cause of action. The complaint will be first considered, and all of its allegations are to be taken as verity in determining whether it states a cause of action.

The action is one at law to recover damages for the fraud and deceit of the defendant. The essential constituents of such an action are false representations, knowledge of the falsity, deception and injury. Pecuniary loss to the deceived party is absolutely essential to the maintenance of the action. Fraud and deceit alone do not warrant the recovery of damages. Deceit and injury must concur. (*Urtz* v. *N. Y. C. & H. R. R. R. Co.,* 202 N. Y. 170.) Measuring the complaint by this rule of law, it clearly states a cause of action.

In further support of the complaint it is argued that the insurance money collected by the Steamship Company was had and received by the Steamship Company for the benefit of the Bank. There can be no doubt that a carrier or other bailee has an insurable interest in the goods intrusted to its care. It has been many times held that when a bailee avails himself of his right to insure, he may insure not only his own interest but also the goods themselves against loss to the owner. There are many cases which hold that where the policy of insurance taken out by the bailee reads that it is for his or its own benefit, or for the account of whom it may concern, or in trust, or other like words showing an intent to insure the owner against loss, the owner may subsequently ratify such

insurance made by the bailee within a reasonable time after the occurrence of the actual loss. (See *Stillwell* v. *Staples,* 19 N. Y. 401; *Home Ins. Co.* v. *Baltimore Warehouse Co.,* 93 U. S. 527; Joyce Ins. § 1692 *et seq.*) The policy of insurance in the case at bar is not before us, but from the complaint it appears that the carrier simply insured itself against its liability for the loss of the goods. The attention of the court has not been called to any case which holds that where a bailee insures against its own liability only, the owner has the right to collect the insurance moneys remaining after the bailee has collected its charges against the goods. In the absence of the terms of the policy we are, therefore, unable to determine whether or not the Bank and its assignee had an interest in the insurance moneys.

There remains the question as to whether or not the defenses pleaded are germane to the cause of action stated in the complaint. In the *Urtz Case (supra)* it was in effect held that the plaintiff in a cause of action such as this must show in the first instance that the cause of action which had been yielded up by reason of the deceit of the defendant was in truth a valid existing claim against the defendant originally. In the case at bar, therefore, the first inquiry that presents itself is, would the defense pleaded tend to defeat the plaintiff's claim that the Bank had a valid cause of action against the Steamship Company at the time the alleged fraud was committed and when the Bank was threatening to sue the Steamship Company. From the complaint it appears that the threat to sue the Steamship Company was made after the accrual of the claim.

The provisions in the bill of lading providing for the presentation of claim within a certain time, and for the commencement of an action within six months, have been held to be valid limitations upon the carrier's legal liability. As the shipment involved herein was *from* a foreign country to the port of New York, the recent change made by the First Cummins Amendment to the Interstate Commerce Act (38 U. S. Stat. at Large, 1196, 1197, chap. 176, amdg. 24 id. 386, § 20, as amd. by 34 id. 593, 595, § 7; *Van Pelt* v. *Barrett,* 205 App. Div. 332) does not seem to modify the validity of the limitations contained in this bill of lading.* These limitations of liability would clearly be germane in an action against the

---

* See Transportation Act, 1920 (41 U. S. Stat. at Large, 494), §§ 436, 438, amdg. in part First Cummins Amendment. See, also, Interstate Commerce Act (24 U. S. Stat. at Large, 379), § 1, as amd. by Commerce Court Act (36 id. 544), § 7, and by Transportation Act, 1920 (41 id. 474), § 400; Interstate Commerce Act (24 id. 387), § 25, subd. 4, as added by Transportation Act, 1920 (41 id. 497, 498), § 441.— [REP.

carrier for the loss of the bags, and, therefore, it must be held that such limitations are germane to the plaintiff's cause of action. It may well be that the plaintiff can prove facts creating an equitable estoppel against the Steamship Company. If the Bank had pursued a remedy against the Steamship Company based upon the liability of the carrier, it would have been competent for the carrier to set up the terms of the bill of lading, and, upon such proof being adduced, it would also have been competent to show that the Steamship Company, through its officers and agents and by its conduct, had ratified the claim as a valid one and that it would be estopped from standing upon any of the conditions as to limitations of liability. All of these facts go to an essential element of the plaintiff's cause of action, namely, that there must be injury concurring with deceit.

For the same reason the second defense, which in effect pleads the Harter Act, otherwise known as the Foreign Bills of Lading Act of 1893 (27 U. S. Stat. at Large, 445, chap. 105), must be allowed to stand as being germane to the issue, although that defense also is subject to being defeated by acts and conduct of the Steamship Company amounting to an equitable estoppel.

The third alleged defense, namely, that if any liability existed for loss and damage, as alleged in the complaint, the Bank now has and at all times since the said shipment has had a right to proceed *in rem* against the steamship *Mohican*, is stricken out. The fact that the Bank may have had more than one remedy does not compel its assignee to pursue any particular remedy. He had the privilege of choice, and he was within his rights in electing to pursue his remedy against the defendant.

The fourth defense was properly stricken out by the trial judge upon the ground that no facts were pleaded and that it was a mere conclusion of law.

In pleading the first three defenses the defendant pleaded, as introductory to each of them, the following: " Defendant re-alleges the allegations hereinbefore contained as if the same were herein alleged at length and in detail." This allegation was in violation of rule 90 of the Rules of Civil Practice and was properly stricken out.

The order should be modified by directing that the first and second defenses be allowed to stand as being germane to the issue, and as thus modified affirmed, without costs.

KELLY, P. J., JAYCOX, YOUNG and KAPPER, JJ., concur.

Order modified by directing that the first and second defenses be allowed to stand as being germane to the issue, and as thus modified affirmed, without costs.