### AMERICAN EAGLE FIRE INS. CO. v. GAYLE et al.

#### No. 8033.

Circuit Court of Appeals, Sixth Circuit.
Dec. 12, 1939.

T. M. Galphin, Jr., and Frank M. Drake, both of Louisville, Ky. (Thomas M. Galphin, Jr., Frank M. Drake, and Gordon, Laurent, Ogden & Galphin, all of Louisville, Ky., on the brief), for appellants.

Sawyer A. Smith, of Covington, Ky. (John T. Murphy and Sawyer A. Smith,

both of Covington, Ky., and Frank C. Greene, of Louisville, Ky., on the brief), for appellees.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

■ A large quantity of tobacco in the possession of Gaines as receiver for the Northern District Warehousing Corporation at Carrollton, Kentucky, was completely destroyed by fire. The tobacco had been insured with companies lodging the appeal, in the aggregate sum of $39,000. Its appraised value was $35,642.12, but the interest of the receiver therein was only $22,458.02, and this amount was paid by the appellants immediately upon its ascertainment, disclaiming greater liability under the terms of the policies. The appellees having asserted an interest in the tobacco and in the coverage of the policies, under contract with the receiver, the appellants brought an action for a declaration of limited liability against the receiver and appellees under the Federal Declaratory Judgment Act, Section 274d, Judicial Code, 28 U.S.C.A. § 400.

The appellees in apparent confusion as to the manner of asserting their rights, sought in the first instance by answer and cross petition, recovery from the receiver. Later, by amendment, they assumed recovery might be had against the insurers upon the policies as written, and still later, by further amendment, they sought reformation of the policies as an alternative remedy, the prayer being that the policies, if necessary, be modified "so as to include the tobacco" to which they claimed ownership.

The District Court ascertained the sum due the receiver and entered judgment therefor. It adjudged that there was no liability of the receiver to the appellees for loss sustained by them through the fire, upon an interpretation of the contract between the receiver and the appellees and because of a disclaimer therein of the receiver's liability. Upon the final phase of the case the court announced an opinion in which was expressed the view that the policies, as written, did not express the real agreements between insurers and insured, and should be reformed. Thereafter judgment was entered for the appellees in a sum aggregating the difference between the amount paid by appellants to the receiver and the value of the insured property at the time of destruction.

Were reformation imperative to support the judgment, we might find it difficult to affirm. There was no order or decree reforming the policies. Even were we to construe the court's memorandum as effecting a reformation assuming that to have been done which, in response to the opinion, ought to have been done, we are still unable to adjudicate the need of reformation, whether prayer therefor was supported by that quantum of evidence required by the rule that the reformation of written contracts may be had only upon evidence clear and convincing, and unable to say in what respect the contracts were reformed. The memorandum of the court is silent as to terms which are to be eliminated, inserted or modified, the direction being that the appellees "should be adjudged the relief prayed for in the prayer of their answer and cross-petition." We are not enlightened by the prayer of the cross petition thus incorporated into the opinion by reference, since it, too, is silent as to terms of the policies to be eliminated, modified or substituted, to the end that the real agreements be expressed.

■ The appellees now contend, however, that their interest in the insured property is covered by the insurance contracts as written, and if this is sound and the assailed judgment is supported by the evidence and the terms of the contracts as executed, it will become unnecessary to rule upon the issue in respect to whether the contracts were or should have been reformed, since the rule is that a judgment must be affirmed if right for any reason, however erroneous the reasons leading to it may be. This leads us to consider the relation of the parties and the terms of the insurance contracts. The appellees purchased the insured property with funds advanced by the Northern District Warehousing Corporation and it was stored in the latter's warehouse. Subsequently, Gaines was appointed receiver of the Warehouse Company by the Circuit Court for Carroll County. When placed in receivership, the Warehouse Company held policies insuring the tobacco against fire which it transferred to the receiver. Upon their expiration, the policies now in issue were obtained. The new policies are identical in amount, terms and coverage, with the old, and were issued by the same insurers.

When Gaines was appointed receiver he ascertained the claim of the receivership

estate upon the tobacco to be $25,261.43. As he was not an operating receiver he sought to convert the assets into cash so as to expeditiously discharge the obligations of the estate. He entered into a contract with the appellees which, insofar as its terms are now important, gave the appellees the right to obtain private bids for the tobacco, the receiver to be first reimbursed out of its avails to satisfy his lien with interest, insurance and carrying charges, and the residue of the purchase price to become the sole property of the appellees. By item (8) of the contract, it was provided:

"In consideration of the fact that no storage fee is to be charged, the said June W. Gayle, Edward Galloway and Jas. Shelton, individually and collectively, hereby waive and release Perry B. Gaines receiver as aforesaid, and the Northern District Warehousing Corporation, from any liability due to either of them incident to any damage done or loss of any of the tobacco herein referred to incident to the storage and possession thereof by said Receiver of the Northern District Warehousing Corporation."

At the time of the destruction of the tobacco by fire most of it was still in the possession of the receiver. The insurance contracts were of "Standard Form" containing the usual ownership provision:

"This entire Policy unless otherwise provided by an agreement endorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership."

The insuring clause contained an enlargement upon the sole ownership provision which, insofar as it is material, is as follows:

"Provided the insured is legally liable therefor, this item shall also cover such merchandise held in trust or on commission, or on joint account with others, or sold but not delivered";

Each policy also contained the provision:

"This company shall not be liable for loss to * * * property held on storage."

■ The appellees had an insurable interest in the property, and this without regard to whether the legal consequences of vague terms of their contract with the receiver, placed ownership of the tobacco in the appellees, subject to the receiver's lien for advancements, insurance and carrying charges, or whether legal title passed to the receiver subject to equitable interest in the appellees to the extent of profits derived from its sale. The appellants contend that by their contracts they did not insure the tobacco but merely agreed to indemnify the receiver. So the limit of their obligation they say is the interest of the receiver in the property. They did not undertake to indemnify the appellees. They neither knew nor could know, that the appellees had interest therein, nor in view of fluctuating markets, diversity of grades and changing physical conditions, could they know or be expected to know that the total coverage exceeded the value of the receiver's interest, and that they were collecting premiums beyond the protection afforded. They rely upon the sole ownership provision in the contracts, and if that is broadened by the proviso of the insuring clause extending the coverage, the interest of the appellees in the tobacco is not such an interest for which the insured is "legally liable," and the property is not "merchandise held in trust," or "on commission," or "on joint account with others," or "sold but not delivered." Finally, they argue that even though liability might otherwise have existed on the part of the receiver, it was expressly waived and released by item (8) of his contract with the appellees.

■ In respect to the first contention, it must be noted that the insurance contracts were not originally entered into with the receiver—they were made with the Warehousing Company, and the inference is not to be escaped that as drawn they contemplated insuring property held by the warehouse in other than unconditional and sole ownership. This is demonstrated not only by general public knowledge of the usage of the warehousing business, but also by the proviso in the insuring clause which extends the coverage to merchandise held in trust, on commission, on joint account with others, and to property sold but not delivered. It is true that the original policies were assigned by the insured named therein to the receiver; that subsequently they expired, and new insurance contracts were executed; yet the new contracts were but continuations of the old with identical terms, and in this situation they are to be construed as the originals would have been, for as was said in American Fire Insurance Company v. Nugent, 7 Ky.Law Rep. 598:

"Where a policy is renewed by a different agent from the one who took the original policy, without an application made to

the new agent, the new contract is the same as the old, the foundation for the new contract being the representations made to the original agent, and the understanding existing between him and the insured."

It is unimportant, therefore, that Gaines was a liquidating and not an operating receiver. In his right to insurance protection for himself or other parties in interest, he stood in the shoes of the Warehouse Company. It is to be noted, in this connection, that the appellants, though insisting upon strict application of the sole and unconditional ownership provision, have not sought to avoid the policies because of breach of that provision, but have paid the receiver the amount ascertained to cover his interest in the insured property.

There is no merit in the contention that the receiver owed no duty and therefore had no legal liability to the appellees in respect to the stored property. As long ago as 1876, in Home Insurance Company v. Baltimore Warehouse Company, 93 U.S. 527, 544, 545, 23 L.Ed. 868, it was held that a warehouseman, even though he made no charge to customers for insurance, and even though the customer was not informed of the existence of the policy, held goods "in trust" within the meaning of a similar policy provision, and the goods having been destroyed by fire, the insured was entitled to recover their entire value, applying so much as necessary to cover his own interest and holding the remainder as trustee for the owner. The opinion followed the English rule announced in cases therein cited. Nor is a waiver or limitation upon the liability of the bailee to the bailor of any importance in construing the policy. It can have no bearing upon proper construction of its terms. As was indicated in the leading case, such provision merely relieves the bailee from liability as an insurer, "it would be straining the language of the notice most unwarrantably, were we to treat it as amounting to an engagement that the Company would not obtain insurance of the property from some corporation authorized to insure. * * * The policy upon which this suit was brought covered the merchandise held by the Warehouse Company on storage and not merely the interest of the bailees in that property."

In the situation here disclosed, and under the terms of the contracts, the subject matter of the insurance was tobacco in storage, and the policies were more than contracts for the indemnification of the receiver. Home Insurance Company v. Baltimore Warehouse Company, supra. The exemption of the estate from liability to the appellees by the receiver's contract with them cannot avail the insurers, and the policies do not require that the liability of the insured to others in interest be adjudicated. Liverpool & London & Globe Insurance Company v. Crosby, 6 Cir., 83 F.2d 647; National City Bank v. National Security Co., 6 Cir., 58 F.2d 7.

The judgment below is affirmed.