Williams & Manning *v.* Southern Mutual Insurance
Co., Appellant.

Argued October 12, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

·*Robert T. McCracken*, and with him *Horace Michener Schell*, for appellant.

*Thomas Raeburn White*, and with him *A. J. Creskoff, J. I. Weinstein* and *James R. Wilson*, for appellee.

OPINION BY KELLER, J., January 25, 1933:

This was an action on a fire insurance policy for $2,000 covering the buildings, machinery and stock and material of the plaintiff company. The total insurance on the property amounted to $403,000, divided among twenty-seven companies. The sound value of the buildings was admitted to be $133,835.37, and the loss or damage to them $90,129.09. The parties could not agree as to the sound value of or loss or damage to (1) the machinery and equipment, and (2) the stock and material.

Four main questions are raised by the appeal: (1) Should the court have submitted to the jury the question whether or not the fire was of incendiary origin, and occurred with the connivance of the insured? (2) Did the policy cover certain rivet setting machines leased by the owner to the insured and held by the latter on bailment lease, for use only? (3) Did the evidence support the verdict of the jury, as to the damage done to machinery, stock and materials? (4) Was the evidence of fraud and false swearing as to the loss sustained by the insured such as to require either the entry of judgment in favor of the defendant non obstante veredicto or the grant of a new trial?

(1) We shall not go into a discussion of the evidence in the case with reference to the first question. Nothing would be gained by it, unless the analysis went far beyond the reasonable limits of this opinion. We agree with the court below that it was not sufficient to sustain a finding that the fire was of incendiary origin, and much less, that it occurred with the connivance of the insured. There were some suspicious circumstances but the sum of all of them did not take the case out of the region of mere suspicion into that of reasonably well grounded fact. The question does not become one for the jury unless the evidence brings the case within the latter domain: Steele v. Armstrong County Mut. Fire Ins. Co., 305 Pa. 259, 157 Atl. 605.

(2) The insurance policy covered not only plaintiff's own property, machinery, stock and material, but was also on "their interest in and on their legal liability for similar property held by them as follows, viz: in trust. or on commission or on joint account with others, or on storage or for repairs, all situate and contained in or on premises at Pottstown Avenue and Philadelphia & Reading Railroad, Pennsburg, Montgomery County, Pennsylvania." The rivet setting machines were leased—without privilege of purchase—by the Judson

L. Thomson Manufacturing Company to the plaintiff
company under a written agreement of bailment which
provided: "The leased machinery at all times until
redelivered to the Company shall be held at the sole
risk of the Licensee from injury, loss or destruction,
and each machine shall be kept insured against loss or
damage by fire for the benefit of the Company in the
sum or sums hereinbefore set opposite the name or
number of such machine." The amount claimed on
this item represented the sum of the amounts thus
fixed in the lease or license agreement. The Supreme
Court held in Siter v. Morrs, 13 Pa. 218 that the
words 'in trust' in such a policy of insurance would
not be limited to property which was technically held
in trust, but would cover property held on a bailment
lease. We recognized that pronouncement as still be-
ing the law in Cannon Mills v. Flynn & Gray, 82 Pa.
Superior Ct. 298, but did not apply it in that case,
which was an action by the bailor against the bailee
for part of the insurance collected by the latter, for
the reason that another clause or provision in the
policy restricted it to property for which the insured
had expressly assumed liability, which had not been
done in that case, but was in this one. See also Pitts-
burgh Storage Co. v. Scottish Union & National Ins.
Co., 168 Pa. 522, 32 Atl. 58; West Branch Lumber-
man's Exchange v. Am. Central Ins. Co., 183 Pa. 366,
384, 38 Atl. 1081; Home Ins. Co. v. Baltimore Ware-
house Co., 93 U. S. 527. The leased machinery was
properly included as an item of loss.

(3) The fire occurred on December 17, 1930. An in-
ventory had been taken of all the machinery, equip-
ment, stock, material and other personal property as of
date of December 31, 1929. None had been taken since.
To arrive at the value of the personal property on the
day of the fire plaintiff's accountant started with the
inventory as a base, added to it the cost of all mate-
rial purchased during the period and the cost of pro-

ductive labor and overhead expenses, and deducted from the sum so obtained the total sales during the period as diminished by returns, allowances and discounts and an estimated *gross* profit. Where the subject of insurance is a manufactory whose raw material is being made into finished product and sold, and new raw material in turn is purchased, no better method of arriving at the value of the stock and material on hand at any given time has been suggested, provided the percentage of gross profit which is deducted from the total sales, etc., is reasonably accurate. It is well-nigh impossible to arrive at an absolutely correct figure and the law does not require it. It is satisfied with the best proof available in such circumstances: Allegro v. Rural Valley Mut. Fire Ins. Co., 268 Pa. 333, 112 Atl. 140; Di Foggi v. Commercial Union Assurance Co., 83 Pa. Superior Ct. 518; Girard Fire Ins. Co. v. Braden, 96 Pa. 81; Nusbaum v. Hartford Fire Ins. Co., 285 Pa. 332, 336, 132 Atl. 177. The inventory was admitted in evidence without objection. The items had been prepared by persons who personally went over them and checked them. These sheets were then given to another employee who saw that the values were supplied and then had them typewritten, compared and checked, and entered in the inventory book; and who testified that these typewritten sheets, which were produced, were correct copies of the original lists which had been destroyed. The inventory so produced was competent and relevant evidence from which to start: Specktor v. Victory Ins. Co., 282 Pa. 429, 128 Atl. 95; West Branch Lumberman's Exchange v. Am. Central Ins. Co., supra. In arriving at the inventory value at the time of the fire, it would not have been fair to subtract the sales made since December 31, 1929, without first deducting the gross profit. This does not imply that there was a net profit, but refers only to the increase of the selling price over the cost of the material and labor of manufacture, etc. There

may be a gross profit in the sales and yet a net loss in operation. The plaintiff's accountants in arriving at the value of the stock and materials on hand at the time of the fire used the percentage of gross profit which the plaintiff company had actually applied the previous year, (1929), as determined from the Company's books, viz., 15%. They adopted this percentage, notwithstanding the selling price of plaintiff's goods had declined, because the cost of material had been correspondingly lower. Whether the figure finally arrived at by plaintiff's accountant represented the fair value of plaintiff's stock and materials at the time of the fire was a question for the jury, not for the court. They did not adopt it, but apparently arrived at a figure some $35,000 less. The question was peculiarly one of fact, which was not capable of absolutely exact computation; but the evidence was for the jury, to arrive at the best result possible and one most nearly approximating the loss. If policies of insurance on the stock of going business concerns are to be of any protection there must be some element of uncertainty in such calculations. But they cannot, in the circumstances here present, be said to be without the necessary supporting evidence.

(4) The defendant company's chief defense was based on the alleged false and fraudulent claim of the insured as respects the value of the machinery and stock destroyed. The writer of this opinion is frank to say that if the decision of this question of fact had been left to him to find from the printed record he would have decided against the insured. The evidence is persuasive to him that the insured did keep two general sets of books, beginning in November, 1928; that the second or fictitious set was started for the purpose of establishing or bolstering up bank credits and that the value of the machinery and of stock and materials on hand had been arbitrarily increased with that end in view. This second or fictitious set of books

was the only one shown the certified public accountant, who, beginning with January 1, 1929, made quarterly examinations and checks of the books. It was admitted that the income tax return and capital stock tax return for the last two months of 1928 and the year 1929, which had been prepared by the accountant from these books, were not filed with the Collector of Internal Revenue and the Auditor General respectively, but that returns showing considerably less inventory value, as to both machinery and stock and less gross receipts from sales were actually filed. The bookkeeper of the insured, at the time those returns were filed, swore to these two sets of books and said that the returns as prepared by the accountants,—innocently, of course—were taken from the fictitious books, while those actually filed were taken from the original and true books, which were not produced at the trial. It was admitted that the returns as filed did not agree with the books as produced. And an agent of the Internal Revenue Department testified that he had checked up the returns filed in that office with a set of plaintiff's books and that they did agree. The bookkeeper had to admit that acting under orders of his superiors he had been concerned in the fraudulent preparation of these books, but the president and treasurer of the plaintiff company could not deny that they had knowingly filed returns to the federal and state governments which were false, if the books produced in court were true and correct. It was six of one and half-dozen of the other so far as participation in some illegal conduct was concerned. The proof of loss submitted was based in part on the books produced in evidence, which the defendant claimed were fictitious.

But the writer of this opinion was not the trier of fact, and if he had been, his judgment based on the printed record might have been affected or changed by hearing and seeing the witnesses who testified. The

question of fact was fairly submitted to the jury by the learned president judge of the lower court who charged them that if there was any fraud or false swearing done deliberately and intentionally to cheat the insurance company, their verdict must be for the defendant; and specifically instructed them: "If you believe there were two sets of books, one kept for the inside information of the plaintiff to know really what was what, and incidentally used to file a correct Income Tax Report with the Government, and another set of books showing mythical and exaggerated figures and giving a much better state of affairs than the other one, which latter set of books was used to deceive other people, but is now handed over by the plaintiff to deceive the insurance company and to get an improper verdict in this case, then that would be so clearly fraud and so obviously must involve a knowledge of misrepresentation that there ought to be a verdict for the defendant." There could be no misunderstanding those instructions, and the verdict for the plaintiff resolved the question of fact in favor of the plaintiff, by the only authority having power to decide it.

But the defendant claims that because in making up their verdict the jury adopted as the value of the machinery and stock on December 17, 1930 the figures given in the income tax return as their value as of date of December 31, 1929, they must have believed that there were two sets of books and that the set produced in court was fictitious and fraudulent. But it does not follow. While a verdict for unliquidated damages must be based on evidence it does not have to agree exactly with the evidence or any part of it. It may be for the highest amount testified or for the lowest, or for any sum in between that the jury may consider fair and reasonable. Having determined that the insured did not keep two sets of books, in order that no injustice might be done the defendant company, they may have concluded that the plaintiff cer-

tainly had on December 31, 1929 the stock and machinery which it had returned to the Collector of Internal Revenue that it possessed on that date, and that the subsequent operations had not materially increased or decreased its value. The jury may have concluded that there were errors in the valuations submitted by the plaintiff, but that they were not made wilfully and knowingly and with intent to cheat and defraud the insurance company, and therefore did not cause a forfeiture of its right to recover on the policy: Allegro v. Rural Valley Mut. Fire Ins. Co., supra, p. 337.

The court below was of opinion that this circumstance presented no sufficient ground for a new trial. We are satisfied that it did not warrant the entry of judgment non obstante veredicto in favor of the defendant, and does not require us to find that the lower court was guilty of an abuse of discretion in refusing a new trial.

The assignments of error are overruled and the judgment is affirmed.