Williams, Receiver, Appellant, *v.* Lumbermen's Insurance Company of Philadelphia.

Argued May 11, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

2

*Thomas Raeburn White,* with him *James E. Riely, A. Jere Creskoff, Carlos Berguido, Jr., James R. Wilson* and *Jacob I. Weinstein,* for appellant.

*William A. Gray,* with him *Francis T. Anderson,* for appellee.

OPINION BY MR. JUSTICE BARNES, October 3, 1938:

The question of first importance on this appeal is whether the defendant insurance company is bound, on the principle of res adjudicata, by a judgment rendered in a prior suit, from denying liability and making defense to the present action. The facts which we have gathered from the record are as follows:

On December 17, 1930, as the result of a fire, two buildings with their contents owned by Perkiomen Trunk and Bag Company, Inc., at Pennsburg, Montgomery County, were destroyed. At that time the two buildings and their contents were insured against loss by fire with twenty-seven insurance companies in varying amounts, totaling $403,000. The destruction of its property affected the credit of the company to such extent that it was necessary to have receivers appointed, of whom the present plaintiff is the survivor. Proofs of loss were duly filed with the companies in which there

were claimed losses of $416,495.13. Payment of the claims was refused following an investigation, in the course of which the officers of the insured were interviewed and its books audited.

Thereupon separate suits were instituted against each one of the insurance companies, and statements of claim, identical except for the amounts involved and the names of the defendants, were filed. The amount claimed of the present defendant, as its proportionate share of the total loss is $47,536.39.

The companies filed affidavits of defense, denying liability for reasons as follows: (1) that the fire had been wilfully and deliberately set for the purpose of collecting the insurance. This defense was abandoned at the time of trial; (2) that the insured fraudulently overstated its claim in respect to the actual value of its machinery and stock on hand, manufactured, unmanufactured, and in process at the time of the fire, and the loss and damage thereto.[1]

The insurance companies retained the same counsel, an attorney familiar with cases of this character, who had represented many of the defendants on previous occasions. After counsel was employed he held joint consultations with the representatives of the various companies. At one of these meetings a committee of three persons, chosen from such representatives, was appointed to facilitate the transmittal of information to the defendant companies during the litigation. It clearly ap-

---

[1] The plaintiff averred in paragraph 10 of its amended statement that the actual cash value at the time of the fire of the stock manufactured, unmanufactured, and in process was $284,443.22, and the loss or damage to the same was $276,491.41; that the actual cash value at the time of said fire, of all the machinery and equipment, goods and chattels, was $62,370.84, and the loss or damage thereto was the sum of $49,874.63, a total loss on these items of $326,-366.04, which, together with a loss on the buildings of $90,129.09, made a total alleged loss of $416,495.13, for which claim was made upon the policies.

4

pears that otherwise the committee was without power to act for, or bind the companies in any way. The president of defendant, who attended the meeting, objected to the appointment of this committee, notwithstanding its limited powers.

On January 4, 1932, when this case was first called for trial, it was agreed between counsel, at the request of the president of defendant, that the suit against the Southern Mutual Insurance Company (hereinafter called "Southern Mutual"), upon a policy for $2,000, should be tried first. In that case a verdict was rendered for the plaintiff, on which judgment was entered. On appeal it was affirmed by the Superior Court, and subsequently by this court.[2]

In the meantime, thirteen of the remaining cases were tried together in the United States District Court at Philadelphia, resulting in verdicts for the plaintiff. Before the trial of these cases, plaintiff amended the statements of claim to set forth the prior verdict and judgment in the Southern Mutual case, and to aver that all the defendants, because of their coöperation in the defense of that claim, were bound by the judgment there entered, upon the principle of res adjudicata. The court submitted that question to the jury in the form of a special interrogatory, and it was decided adversely to the plaintiff. Following the verdict in the District Court all the insurance companies, except the present defendant, compromised and settled the suits upon the policies.

In the present case the statement of claim was likewise amended to set up the application of the principle of res adjudicata. Defendant then filed an amended affidavit of defense averring that such question had been determined against plaintiff by the jury in the district court. On February 4, 1935, this case was reached for trial in the court below. It was then agreed to submit

[2] *Williams et al., Receivers, v. Southern Mutual Ins. Co.,* 108 Pa. Superior Ct. 148; 312 Pa. 114.

preliminarily the issue of res adjudicata to the court without a jury. The court, after hearing testimony upon the point, held that the doctrine was not to be applied to this case.

Finally, on November 8, 1937, this action proceeded to a jury trial upon the merits, and it resulted in a verdict for the insurance company. Plaintiff's motion for judgment non obstante veredicto on the ground that there was no evidence to sustain the verdict, and its rule for a new trial were denied. This appeal is from the entry of judgment upon the verdict.

Plaintiff's position is that the defendant, by actively participating and joining in the defense of the Southern Mutual suit, and by contributing toward the expenses of the investigation, trial and appeal thereof, and further by securing a postponement of the trial of its own case upon the representation it would be bound by the judgment in the action which was tried, is concluded by the judgment in that case. Plaintiff, however, is unable to point to any specific agreement upon the part of defendant, either written or oral, to be bound by the Southern Mutual verdict. Defendant was not named as a party to that suit. Therefore, unless the circumstances show that defendant actually controlled or had the right to control the trial in the Southern Mutual case, and that plaintiff also would have been bound thereby with respect to its claim against defendant, if the verdict had been for defendant, the principle of res adjudicata or estoppel by judgment is without application. We have searched the record in vain for any evidence that the parties agreed to make the case tried a "test case" and to abide by the final judgment there rendered.[3]

A person who is not a party to the record, or in privity with such party, may be bound by the verdict and judgment in a suit only if such person, for purposes and in-

---

[3] The testimony of Robert T. McCracken, Esq., the trial lawyer of defendant in the case, is that there was no such agreement.

terests of his own, openly and actively, with notice to the adverse party, assumes and manages the litigation: *Peterson v. Lothrop*, 34 Pa. 223. In *Stonecipher v. Keane*, 268 Pa. 540, it is said (p. 546) : "To be concluded by the judgment, one must be a party to the suit or what is equivalent thereto *(Siegfried v. Boyd* [237 Pa. 55], supra), with a right to control the proceedings and take an appeal: *Walker v. Phila.*, 195 Pa. 168; *Rittispaugh v. Lewis et al.*, 103 Pa. 1; *Lightner's Estate*, 187 Pa. 237."

Before any person may be bound by a judgment because of participation in the case, it is necessary that he be virtually substituted for the actual party in the management and control of the litigation. In *Building Society v. Holt*, 184 Pa. 572, we said (p. 576) : " 'The law includes all who were directly interested in the subject-matter, and had a right to make defense, or to control the proceeding, and to appeal from the judgment. The right also involves the right to adduce testimony and to cross-examine the witnesses on the other side.' " Merely to aid in the trial, either personally or through counsel, or to pay the attorney's fees, or to contribute toward the expenses of the litigation, is not enough to cause the person doing so to be bound by the judgment rendered: *Litchfield v. Goodnow's Admr.*, 123 U. S. 549; *Rumford Chemical Works v. Hygienic Chem. Co.*, 215 U. S. 156.

The theory upon which cases proceed where a party is concluded by the judgment is that courts will look beyond the nominal party and treat as the real party him whose interests are involved in the issue. It does not seem to us that the circumstances here indicate that defendant occupied a status equivalent to that of "the real party in interest" in the Southern Mutual case. The facts proved fall short of the test of real interest, control and management described in those decisions which have held that a party is bound by a judgment rendered. While defendant contributed a share of the expenses of the litigation, and consulted with the other companies during the course of the trial, there was no

agreement which conferred upon it the control and management of the defense of the case, nor did it actually undertake so to do. That all employed the same counsel is not material. At trial he was acting solely for his client, the Southern Mutual Company, which paid the judgment entered against it.

It is argued that the appointment of a committee of three representatives of insurance companies indicated a right to control the suit, but the record shows that the sole function of the committee was to disseminate information among the companies relative to the progress of the litigation. The committee was without power to control the conduct of the case, and communications concerning settlement were addressed to it for the purpose of transmittal to the defendant companies.

While undoubtedly there was considerable coöperation among the various insurance companies which were involved in this same fire loss, the record fails to disclose any agreement on their part to be bound by the judgment in the Southern Mutual case. We are convinced, from our study of the record, that this is not a proper case to apply the principle of estoppel by judgment or res adjudicata.

The decisions in *Greenwich Ins. Co. v. Friedman Co.*, 142 Fed. 944, and in *Columbia Ins. Co. v. Mart Waterman Co.*, 11 Fed. (2d) 216, which were called to our attention by plaintiff, are distinguishable upon their facts from the case before us. In the first case the basis of the ruling of the court is that the parties intended to make the litigation a "test" case and the companies, by express agreement, entrusted the defense of all cases to a joint committee, empowered to appoint counsel, supervise the litigation and apportion costs. In the second case, the court held that the "insurance companies at bar agreed to be bound by the acts of the other three insurers in defending the Eastern District suit."

The remaining contentions of plaintiff require but brief discussion. It is asserted the judgment of the court

must be reversed and a new trial granted because of the absence of evidence in the record to sustain the defense upon which the insurance company here relies. The policy provides: "This entire policy shall be void . . . . in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

It is claimed by defendant that the policy became void because the officers of the insured deliberately attempted to defraud the defendant by presenting an exaggerated statement of loss. To establish this, defendant introduced the sworn income tax returns of the insured, setting forth a substantially lower value for the property destroyed than that claimed in the proofs of loss. The president of the insured, when called as a witness, sought to explain this difference by testifying that the proofs of claim were true and the returns filed with the income tax authorities were false. In view of the conflicting and contradictory evidence concerning the value of the property destroyed, it is our opinion that it was for the jury alone to say which statement was correct and which was false, and whether there was an attempt to practice fraud upon the defendant.[4]

Plaintiff finally urges that a new trial should be granted because of certain errors in the charge of the trial judge. These objections relate to the proof of fraud, and the proper inferences to be drawn from the proofs offered by the defendant upon that issue. They are covered by assignments of error No. 13 and No. 14. We cannot consider these assignments, because it appears from the record that no exceptions were taken, either specifically or generally, at the conclusion of the charge, to those portions thereof which the plaintiff

---

[4] Upon this point see the opinion of Judge KELLER in the *Southern Mutual Insurance Company* case, 108 Pa. Superior Ct. 148, at pages 153-5.

claims are prejudicial and in error. A reading of the charge as a whole satisfies us that the trial judge properly submitted the issues of the case to the jury. See also *Com. v. Razmus,* 210 Pa. 609; *Reznor Mfg. Co. v. Bessemer & Lake Erie R. R. Co.,* 233 Pa. 369; *Long v. Daylor,* 327 Pa. 484.

Plaintiff complains because the court refused his request to send out certain auditors' reports with the jury. It is well settled that the determination of what documents shall go out with the jury is largely within the discretion of the trial judge: *Com. v. Brown,* 264 Pa. 85; *Com. v. Prescott,* 284 Pa. 255. See also *Com. v. Clark,* 123 Pa. Superior Ct. 277. We find no abuse of discretion in this ruling especially since plaintiff has failed to show in what respect he was prejudiced.

Judgment affirmed.

Mr. Justice STERN took no part in the decision of this case.