In re PODOLSKY.

No. 7481.

Circuit Court of Appeals, Third Circuit.

Nov. 27, 1940.

Maurice L. Kessler, of Pittsburgh, Pa., for appellant.

Abraham Pervin, N. H. Leventon, and Sachs & Caplan, all of Pittsburgh, Pa., for appellees.

Before BIGGS, MARIS, and GOOD-RICH, Circuit Judges.

GOODRICH, Circuit Judge.

■ C. I. T. Corporation, Homestead Fire Insurance Company, and Harold W. Goldstein, trading as Anchor Lite Appliance Company, hereinafter referred to as claimants, filed petitions for an order on the trustee of the bankrupt's estate to pay to them various amounts alleged to have been collected by the trustee under fire insurance policies by reason of the destruction of merchandise owned by them and in the possession of the bankrupt when the fire loss occurred. The petitions were dismissed by the referee and the claims disallowed. The District Court of the United States for the Western District of Pennsylvania, on review of the orders referred to, reversed the orders of the referee disallowing the three claims, and directed that the claims be allowed in accordance with the opinion of the court. From this order the trustee appeals. The case is before this court upon an agreed statement of the case filed pursuant to Federal Procedure Rule 76, 28 U.S.C.A. following section 723c. The practice is to be commended.

Sol E. Podolsky was adjudicated a bankrupt on June 30, 1938. In February, 1938, all the merchandise in the bankrupt's place of business was completely destroyed by a fire, including merchandise belonging to the claimants herein. The merchandise had been in the bankrupt's possession upon trust receipts or bailment leases. Neither the receipts nor the leases required the bankrupt to maintain insurance on the merchandise covered by these documents. There was no evidence that the fire was caused by negligence.

The bankrupt carried fire insurance policies to which were attached riders, the significant words of which are as follows: "$2,000.00 on Retail Stock of merchandise, consisting principally of Electrical Appliances and all other goods, wares and merchandise not more hazardous, kept for sale by the insured, not specified in the foregoing, his own, or sold but not removed; also on his interest in and on his legal liability for similar property held by him as follows, viz: in trust or on commission, or on joint account with others, or on storage or for repairs, * * *."

The fire loss was adjusted for $3,000 and this amount was paid to the trustee. The

adjusters for the insurance company based the adjustment on the full value of the merchandise which had been destroyed, including merchandise belonging to the claimants. The money value of all the merchandise in the bankrupt's store is stipulated to be $4,855.76. The claimants asked for a proportionate amount of the insurance money paid to the trustee for the value of their merchandise which was destroyed by fire.

If the insurance policies covered the goods belonging to the claimants, they are obviously entitled to their proportionate share of the money paid under the policies. A bailee in possession of goods belonging to another may insure such goods against fire and, if fire occurs and the bailee collects the insurance money, he holds that part of the fund over and above his interest in the goods as trustee for the owner. Home Insurance Company v. Baltimore Warehouse Co., 1876, 93 U.S. 527, 544, 23 L.Ed. 868; Siter v. Morrs, 1850, 13 Pa. 218; Roberts v. Firemen's Ins. Co., 1894, 165 Pa. 55, 30 A. 450, 44 Am.St.Rep. 642. The words in a policy "held by him in trust" do not mean a technical relation of trustee and said trust but are used in a "mercantile sense, goods entrusted to them by the legal owners". Home Insurance Company v. Baltimore Warehouse Co., supra.

But the words in the policy taken out by the bankrupt in this case were "on his interest in and on his legal liability for" property of others which he held in his possession. So far as it appears the legal interest of the bankrupt in this property was nothing, and if he had any interest the insurance money which he collected would to that extent undoubtedly go to his trustee and not to these claimants. Did he have any "legal liability for" such property? A bailee, in the absence of express contract, is not liable for the loss of bailed goods if the loss is not caused by his negligence. 6 Am.Jur. § 242. The appellees claim in their brief that "the bankrupt was legally liable to return the merchandise unused or to pay for the same". But there is no basis for this statement in the stipulation, and the stipulation is our sole source of facts in this case. The language of the insurance policy is definite in limiting the liability of the insurance company to the interest or the legal liability of the assured for the bailed property. The insurer's obligation "cannot be enlarged or varied by judicial construction". Millers' Mut. Fire

Ins. Ass'n v. Warroad Potato Growers Ass'n, 8 Cir., 1938, 94 F.2d 741, 742. It seems clear, therefore, that neither the assured nor these claimants would have had any right against the insurance companies to recover for the loss of the bailed property under the terms of the policies. This view is supported by the decision in Cannon Mills, Inc. v. Flynn & Gray, 1923, 82 Pa. Super. 298. There the assured had taken out a policy containing the words "Property of the assured, held in trust or on consignment or sold but not removed, or belonging to others for which the assured is liable, * * *." The court said (82 Pa.Super. page 301): "Manifestly * * * the policies, by express terms, limit the liability of the companies to the liability of the assured". See, in accord, Sagransky v. Tokio, etc., Insurance Company, 1927, Ltd., 92 Pa.Super. 500.

Williams & Manning v. Southern Mutual Ins. Co., 1933, 108 Pa.Super. 148, 164 A. 128, 129 was relied upon by the appellees in this case and by the District Court as sustaining the claimants' contention. In that case the insurance policy covered, inter alia, the plaintiff's "interest in and * * * legal liability for similar property held * * * in trust or on commission * * *." One of the questions in the case was whether the policy covered certain rivet setting machines leased by the owner and held by the assured on bailment lease. But the bailee there held this leased machinery under a written contract which provided that it was held at the "sole risk of the Licensee from injury, loss or destruction" and the licensee agreed to keep the machinery insured against damage or loss by fire for the benefit of the bailor. The court properly pointed out that this created a situation quite different from that in the Cannon Mills case cited above.

It is entirely clear to us that these claimants have no rights in the insurance money collected from the insurance companies on policies issued to the bankrupt and which became a part of the bankrupt estate. Their claim is no greater than that of any other stranger. The adjustment made by the insurance companies, it is true, was upon the full value of the merchandise and not merely that which belonged to the bankrupt. The record is silent as to why this element was taken into consideration in the insurance settlement. All the record says is that the amount paid, which was less than the sound value of all

the merchandise, was arrived at because "of factors which had nothing to do with sound value". If the trustee in bankruptcy has collected more insurance than the bankrupt's goods were worth that may, upon distribution, give his creditors more than they otherwise would have received, but it does not unjustly enrich those creditors at the expense of these claimants because the claimants had no rights whatever under the insurance contract.

The order of the District Court is reversed and the case remanded, with instructions to reinstate the orders of the referee disallowing these claims.