562 A.2d 330

**Romaine HARTER, Executrix of the Estate of Jack Harter, and Jacqueline Marinelli**

v.

**RELIANCE INSURANCE COMPANY.**

**Appeal of Jacqueline MARINELLI.**

Superior Court of Pennsylvania.

Argued Nov. 3, 1988.

Filed July 7, 1989.

Petition for Allowance of Appeal
Denied Nov. 28, 1989.

16

---

Charles F. Scarlata, Pittsburgh, for appellant.

Richard W. Dibella, Pittsburgh, for appellee.

Before BROSKY, ROWLEY and HESTER, JJ.

ROWLEY, Judge:

Appellant, Jacqueline Marinelli (Marinelli), filed an action in assumpsit to recover the proceeds of a fire insurance policy.[1] The trial court directed a verdict in favor of Reliance Insurance Company (Reliance) on both Marinelli's claim, and on Reliance's counterclaim[2], based upon a criminal conviction rendered against Marinelli on two counts of mail fraud, two counts of obstruction of justice, and one count of subornation of perjury, in the United States District Court for the Western District of Pennsylvania. The charges arose out of the same insurance claim involved in the instant appeal. Included in the two counts alleging mail fraud was an allegation that Marinelli caused the fire to be set. Marinelli was never charged with arson by Pennsylva-

1. This action was originally filed by Marinelli, along with her father, Jack Harter, who claimed an ownership interest in the property. Following Jack Harter's death in 1987, Romaine Harter, Executrix of the Estate of Jack Harter, was substituted by order of court. The Estate has not participated in this appeal.

2. Following the fire, Reliance satisfied the balance of the outstanding mortgage on the property and filed a counterclaim demanding damages from Marinelli in that amount plus interest.

nia authorities and arson was not an element of any of the federal charges. We are asked for the first time to decide whether conviction on an indictment for mail fraud which includes an allegation of arson bars any recovery on a related fire insurance policy.

The relevant facts are as follows: Marinelli was the owner of property identified as the Hancock Building, located at 1205 Liberty Avenue, Franklin, PA, on May 16, 1981. Two months prior thereto, Reliance issued a binder on the aforesaid property, insuring it against loss by fire. On May 16, 1981, at or about 11:30 p.m., the premises were totally destroyed by fire. An investigation was begun and Marinelli was subsequently indicted at Criminal Number 82–143, United States District Court for the Western District of Pennsylvania. Counts One and Two of the indictment alleged that Marinelli and others devised a scheme and artifice to defraud and obtain money from Reliance by means of false and fraudulent pretenses, representations and promises; and as part of that scheme the Indictment included the following allegations:

4. ... that on or about March 1, 1981, the defendant, Jacqueline Marinelli, would and did request an increase in the property insurance coverage on the Hancock Building from approximately $200,000 to approximately $1,000,000.

5. ... that on or about March 17, 1981, the defendant, Jacqueline Marinelli, caused the Reliance Insurance Company to issue a temporary insurance coverage binder in the approximate amount of $1,000,000.00, said insurance to expire on May 17, 1981.

6. ... upon being notified on or about March 16, 1981 by the Reliance Insurance Company that permanent insurance coverage would be provided only if the Hancock Building passed a risk inspection test, the defendant, Jacqueline Marinelli, failed to provide access to representatives of the insurance company for said test.

7. ... shortly after obtaining the aforementioned temporary insurance coverage, the defendant, Jacqueline Mari-

nelli, demanded that all residential tenants vacate the Hancock Building within two weeks.

8. ... in early 1981, the defendant, Jacqueline Marinelli, advised commercial tenants in the Hancock Building to increase their fire insurance coverage on business contents and inventory.

9. ... after obtaining the aforementioned temporary insurance coverage, the defendant, Jacqueline Marinelli, failed to make additional utility and tax payments on the Hancock Building.

10. ... after obtaining the aforementioned temporary insurance coverage, the defendant, Jacqueline Marinelli, failed to take affirmative steps to satisfactorily remedy the health and safety code violations brought to her attention by Franklin public officials.

11. ... after being advised by Reliance Insurance Company on or about May 1, 1981 that the aforementioned temporary insurance coverage binder on the Hancock Building, would not be renewed, the defendant, Jacqueline Marinelli, failed to apply for additional insurance coverage elsewhere.

12. ... the defendant, Jacqueline Marinelli, caused a fire of an incendiary nature to be set at the Hancock Building on May 16, 1981, approximately thirty minutes before the aforementioned temporary insurance coverage binder was due to expire, said fire resulting in the total destruction of the building.

13. ... the defendant, Jacqueline Marinelli, in attempting to obtain insurance proceeds from Reliance Insurance Company, falsely stated that the loss had not originated by any act, design or procurement on her part.

14. ... the defendant, Jacqueline Marinelli, in attempting to obtain the aforementioned insurance proceeds, caused the preparation of fraudulent statements for work allegedly performed at the Hancock Building prior to the fire.

15. ... on or about September 11, 1981, the defendant, Jacqueline Marinelli, caused a fraudulent Sworn Proof of

Loss insurance claim to be mailed from the Sill Adjustment Company to Reliance Insurance Company.

16. ... on or about September 25, 1981, the defendant, Jacqueline Marinelli, caused a fraudulent insurance Contents Claim for the loss of personal property to be mailed from the Sill Adjustment Company to Reliance Insurance Company.

17. ... on or about October 30, 1981, the defendant, Jacqueline Marinelli, gave a false and fraudulent sworn deposition to representatives of the Reliance Insurance Company in an effort to obtain proceeds under the aforementioned insurance coverage.

18. ... on or about December 29, 1981, the defendant, Jacqueline Marinelli, gave a false and fraudulent sworn deposition to representatives of the Reliance Insurance Company in an effort to obtain proceeds under the aforementioned insurance coverage.

Finally, it was alleged that this artifice was accomplished via the United States mails. The jury returned a general verdict of guilty on all five counts of the indictment against Marinelli.[3]

The civil action which precipitated this appeal was tried non-jury before the Honorable Silvestri. The trial court observed that a general verdict of guilty determines all of the material facts which have been sufficiently pled. Applying that principal to the instant case, the trial court held that Marinelli was responsible for setting the fire. Therefore, the trial court held that the mail fraud conviction was a bar to Marinelli's recovering on the insurance policy, and further, that this evidence established her liability to Reliance on the counterclaim. We must disagree.

■ It has long been the law of Pennsylvania that a criminal conviction on a charge of arson bars recovery by the defendant on any related fire insurance policy. In *Mineo v. Eureka Security Fire and Marine Ins. Co.*, 182

---

**3.** A sixth count was included in the Indictment which named only Joseph Marinelli, husband of Jacqueline, as a defendant, and is therefore, not relevant to the case before us.

Pa.Super. 75, 125 A.2d 612 (1956), the appellant sued to recover on various insurance policies on a restaurant which was destroyed by fire. The appellant was the assignee of the proprietors of the restaurant who were arrested and charged with causing the fire. The Superior Court held that the conviction on the charge of arson barred any recovery by the insureds or their assignee. The case before us presents a different question. Marinelli has not been charged with arson. We must decide what effect is to be given the allegations contained in the indictment, as arson is not an element of the crimes for which she was tried and convicted.

The trial court here relied upon *Hurtt v. Stirone*, 416 Pa. 493, 206 A.2d 624 (1965), cert. denied, 381 U.S. 925, 85 S.Ct. 1561, 14 L.Ed.2d 684, in finding that Marinelli's criminal conviction established that she had caused the fire of an incendiary origin, and that she was estopped from challenging that conclusion. In *Hurtt*, our Supreme Court adopted the rule that proof of a defendant's conviction was conclusive evidence of the crime for which he was convicted. *Hurtt* involved an action to recover monies which had been extorted from the plaintiff. The defendant had been previously prosecuted and convicted under the Hobbs Anti–Racketeering Act, 18 U.S.C. § 1951, for extortion. The plaintiff presented the criminal conviction as evidence of the extortion. The Supreme Court held that proof of the extortion conviction was conclusive evidence of the fact that the defendant extorted the money from the plaintiff. Since *Hurtt*, our courts have consistently held that prior criminal convictions are admissible and conclusive evidence in subsequent civil actions arising out of the same incidents and concerning the same activity which was criminally prosecuted in the prior action. *See e.g., In Re Kravitz Estate*, 418 Pa. 319, 211 A.2d 443 (1965) (conviction of murder conclusive evidence of "willful killing" under the Slayers Act); *Folino v. Young*, 368 Pa.Super. 220, 533 A.2d 1034 (1987) (conviction for driving at unsafe speed admissible and conclusive of defendant's negligent operation of motor vehicle in subsequent civil action arising out of same collision,

where driving at unsafe speed conviction formed basis of defendant's conviction for homicide by vehicle for death of a passenger); *In Re Estate of Reinert*, 367 Pa.Super. 147, 532 A.2d 832 (1987) (conviction for theft of money from the decedents was conclusive proof of defendant's acts for purposes of civil action brought by estate to recover stolen funds); *Agsco Equipment Corporation v. Borough of Green Tree*, 297 Pa.Super. 33, 443 A.2d 284 (1981) (evidence of appellant's conviction of mail fraud was properly admitted in subsequent civil suit alleging breach of contract because both actions were based upon the appellant's fraudulent concealment of funds which were to be paid the municipality under the contract).

Marinelli argues that the rule in *Hurtt* is not applicable here and that it was error for the trial court to admit the conviction of mail fraud because the indictment did not include a charge of arson and alleged several theories upon which the jury could properly have found her guilty of mail fraud and still conclude that she had nothing to do with causing the fire. Because the jury returned a general verdict, she argues, the trial court should have examined the record of the criminal case, including the pleadings, evidence, instructions to the jury, and the statements by the criminal trial judge, to determine what facts had been proven by her prior conviction. She relies upon *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951), in making this argument.

*Emich* involved an action to recover treble damages for injuries alleged to have been sustained by reason of a conspiracy in restraint of trade in violation of the Sherman Anti–Trust Act. The action was brought under Section 5 of the Clayton Act, which provided that private individuals could found their suits upon the facts and judgments proved and entered by the government under the Sherman Act. By its terms, Section 5 made a prior final judgment or decree in favor of the United States available to an individual as prima facie evidence of all matters respecting which the judgment would be an estoppel between the defendant

and the United States. In deciding the parameters of this section, the Supreme Court reached to the general doctrine of estoppel and observed that the principal is as applicable to decisions of criminal courts as to those of civil jurisdiction. The court recognized that:

> such estoppel extends only to questions *distinctly put in issue* and *directly determined* in the criminal prosecution.... In the case of a criminal conviction based upon a jury verdict, issues which were essential to the verdict must be regarded as 'having been determined by the judgment.

*Id.* at 569, 71 S.Ct. at 414 (citations omitted; emphasis added). The Court then went on to explain the process by which to determine what was actually decided by the prior verdict:

> The difficult problem, of course, is to determine what matters were adjudicated in the antecedent suit. A general verdict of the jury or judgment of the court without special findings does not indicate which of the means charged in the indictment were found to have been used in effectuating the conspiracy. And since all of the acts charged need not be proved for conviction, *United States v. Socony–Vacuum Oil Co.,* 310 U.S. 150 [60 S.Ct. 811, 84 L.Ed. 1129] (1940), such a verdict does not establish that defendants used all of the means charged or any particular one. Under these circumstances what was decided by the criminal judgment must be determined by the trial judge hearing the treble-damage suit, upon an examination of the record, including the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the courts. *Sealfon v. United States,* [332 U.S. 575, 578, 68 S.Ct. 237, 239, 92 L.Ed. 180 (1948)]; *cf. State of Oklahoma v. State of Texas,* 256 U.S. 70 [41 S.Ct. 420, 65 L.Ed. 831] (1921).

*Id.* at 569, 71 S.Ct. at 414.

The analysis described in *Emich* was followed by the Third Circuit Court of Appeals in *Kauffman v. Moss,* 420 F.2d 1270 (3d Cir.1970), a civil rights action brought against

police officers for damages. The plaintiff admitted in his brief that he had been convicted by a jury of conspiracy to commit burglary, burglary and larceny in a state court. The defendants moved to dismiss the action under F.R.C.P. 12(b), which was granted in part on the basis that the plaintiff's convictions of the state charges had decided the issue of veracity against the appellant, and that he was therefore estopped from bringing a civil suit based upon the alleged use of perjured testimony against him. In reversing that portion of the district court's order, the Court of Appeals followed the test set forth in *Emich* to determine what issues were previously determined by the criminal conviction:

> Where a motion to dismiss is made on the basis of collateral estoppel, it is usually necessary for the court to examine the record of the prior trial, unless it appears on the face of the complaint that it is barred by issues decided in the prior adjudication. Reasonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel.

*Id.* at 1274. Because the district court was without the record of the previous criminal proceeding, the court of appeals held that the trial court had erred in dismissing the action on a motion to dismiss on the basis of estoppel.[4]

 Under the Rule of *Emich* then, the prior criminal conviction is given conclusive effect strictly in accordance with the doctrine of collateral estoppel. Reviewing Pennsylvania case law, we may compare the differences between the doctrines of res judicata and collateral estoppel. The doctrine of res judicata holds that an existing final judg-

---

4. Although *Kauffman* was a plurality opinion (one Judge concurring in the result and one Judge concurring and dissenting), the dissenter agreed with the opinion announcing the decision of the court that *Emich* was the proper test to determine whether an issue had been decided in the previous criminal conviction. The dissenter disagreed, however, with the court's conclusion that the issue of veracity was not proven by the criminal conviction and that the district court was unable to make that determination without the record of the state proceedings. It was the dissenter's position, therefore, that *Emich* was not controlling under the facts of the case.

ment rendered on the merits, without fraud or collusion, is conclusive of causes of action and of facts and issues thereby litigated, and also of those issues that could have been litigated in the first suit but were not, between the parties of the first suit and their privies. *Day v. Volks-wagenwerk Aktiengesellschaft,* 318 Pa.Super. 225, 464 A.2d 1313, 1316 (1983). Collateral estoppel applies only to issues already resolved by a previous action. "[F]or the doctrine of collateral estoppel to apply it must appear that the fact or facts at issue in both instances were identical; that these facts were essential to the first judgment and were actually litigated in the first cause." *Schubach v. Silver,* 461 Pa. 366, 377, 336 A.2d 328, 333–34 (1975). *See also Muham-mad v. Strassburger, et al,* 374 Pa.Super. 613, 618–19, 543 A.2d 1138, 1141 (1988); *Zarnecki v. Shepegi,* 367 Pa.Super. 230, 239, 532 A.2d 873, 877–78 (1987); and Restatement (Second) of Judgments, § 27 (1982). "There is no require-ment that there be an identity of parties in the two actions in order to invoke the bar." *Mellon Bank v. Rafsky,* 369 Pa.Super. 585, 593, 535 A.2d 1090, 1093 (1987). Collateral estoppel may be used as either a sword or a shield by a stranger to the prior action if the party against whom the doctrine is being asserted was either a party or in privity with a party in the prior action. *Id.; Brock v. Owens,* 367 Pa.Super. 324, 332, 532 A.2d 1168, 1172 (1987).

■ Applying these principles to the instant case, the burden was upon Reliance to show that included in Marinel-li's previous conviction was a determination that she was guilty of arson, thus conclusively proving Reliance's de-fense of arson to Marinelli's claim on the insurance policy, and proving Marinelli's liability to Reliance on its counter-claims. We find the analysis of *Emich* and *Kauffman* persuasive as to the duty of the trial court to examine the record of the previous action in order to make this determi-nation and, therefore, we hold that the burden of production was on Reliance to provide the trial court with the record of Marinelli's criminal trial. The trial court was then to deter-

mine whether the allegation of arson contained in the indictment was in fact necessary to the conviction for mail fraud.

██ From the record presently before us, we are able to determine that the allegation of arson was not a necessary condition to the jury's verdict of guilty on the charge of mail fraud. In rebuttal to Reliance's introduction to the criminal conviction, Marinelli offered the following portion of the District Court's charge:

"It is not necessary that the government prove all of the details alleged in the indictment concerning the precise nature and purpose of the scheme or that the alleged scheme actually succeeded in defrauding anyone or that the use of the mails was intended as the specific or exclusive means of accomplishing the alleged fraud. What must be proved beyond a reasonable doubt is that the accused knowingly and willfully devised or intended a scheme to defraud substantially the same as the one alleged in the indictment and that the use of the United States mail was closely related to the scheme in that the accused either mailed something or caused it to be mailed in an attempt to execute or carry out the scheme."

T.T. at pp. 37–38. Counts One and Two of the indictment alleged several theories of fraud, only one of which actually required that Marinelli was a party to the arson. Paragraphs 12 and 13 of the indictment alleges that Marinelli caused the fire to be set and falsely stated to Reliance, while attempting to obtain the insurance proceeds, that she was not responsible for the loss. Paragraphs 14 and 15 allege a separate scheme. Those paragraphs allege that Marinelli caused fraudulent statements to be prepared regarding work allegedly performed on the property prior to the fire and caused a fraudulent proof of loss statement to be mailed to Reliance from the Sill Adjustment Company. Paragraph 16 alleged that Marinelli caused a fraudulent contents claim arising out of the fire to be mailed to Reliance. Neither of these theories of fraud required any finding of arson on Marinelli's part in order for the jury to find Marinelli guilty. Because there were alternative theo-

ries of culpability alleged, which were mutually exclusive with regard to the allegation of arson, we must conclude that the allegation of arson was not essential to the jury's verdict, and therefore, Reliance could not rely upon the conviction of mail fraud as conclusive evidence of Marinelli's involvement in causing the fire. Accordingly, we hold that the trial court erred in receiving Marinelli's conviction for mail fraud as conclusive proof of Marinelli's guilt of arson. Our decision today does not preclude Reliance from introducing evidence in support of its defense that Marinelli was responsible for the arson. *Cf. Greenberg v. Aetna Insurance Company*, 427 Pa. 511, 235 A.2d 576 (1967). Rather, it is limited solely to what effect the prior criminal prosecution has upon the instant litigation. Reliance may still introduce evidence supporting its defense of arson, as outlined by the averments contained in the indictment, or by any other evidence Reliance may possess.

In addition to raising arson as a defense, Reliance also averred that Marinelli had acted fraudulently by misrepresenting information concerning her claim, and thereby voided the policy. Included in the General Conditions section of the policy is the following provision:

4. Concealment of Fraud. This policy is void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

Reliance argues that the trial court's decision was not a determination that the mail fraud conviction was the equivalent to an arson conviction; but rather, that Marinelli's conviction on all five counts contained in the indictment precluded her claim and proved Reliance's counterclaim because the policy specifically provides that concealment or misrepresentations regarding the policy render it void and the prior conviction was conclusive of Marinelli's fraudulent conduct concerning this insurance claim. While we agree that the criminal conviction is conclusive as to Marinelli's fraudulent conduct, we can not agree with Reliance's interpretation of this provision of the policy.

Reliance contends that Pennsylvania courts have recognized and accepted that an intentional misrepresentation as to *any* material fact will relieve the insurer from *all* liability, and cites *Williams & Manning v. Southern Mutual Insurance Co.*, 108 Pa.Super. 148, 164 A. 128 (1933); *Clingerman v. Everett Cash Mutual Fire Ins. Co.*, 124 Pa.Super. 89, 188 A. 93 (1936); *Mowad v. Automobile Underwriters, Inc. Co.*, 128 Pa.Super. 465, 194 A. 574 (1937); and *Higgs v. N.Y. Fire Ins. Co.*, 176 Pa.Super. 310, 106 A.2d 860 (1954). Those cases do not discuss the specific wording of the fraud or concealment clauses contained in the policies involved therein; however, each, with the exception of *Higgs*, cites *Allegro v. Rural Valley Mutual Fire Insurance Co.*, 268 Pa. 333, 112 A. 140 (1920), for the proposition that any fraud or material misrepresentation by the insured voids the insurance policy. *Higgs* cites *Clingerman, supra*, for this proposition, which relied upon *Allegro*.

█ The policy involved in *Allegro* provided that the policy would be void if the insured, "concealed or misrepresented any material fact or circumstance concerning [the] insurance of the subject thereof; or in case any fraud or false swearing by the insured touching any matter related to this insurance or the subject thereof, whether before *or after* a loss." *Allegro, supra*, 268 Pa. at 335, 112 A. at 140. (Emphasis added.) The defendant insurance companies in *Allegro* relied upon this provision contained in their respective policies in defending themselves from the insured's action to recover on the policies. Although the Supreme Court affirmed the jury's verdict in favor of the insured, the Court implicitly recognized the defense as contained in the fraud and concealment provision of the policy *as stated*. The wording of the instant provision is clearly distinguishable in that it is written in the past tense and does not contain any reference to fraud or concealment occurring after issuance of the policy. Reliance has not provided this Court one published case from this or any other jurisdiction in which language similar to that contained in the instant policy was construed in the manner Reliance is now advo-

cating.[5] It is generally held that an insurance policy is construed against the party who has written the policy, and that the words contained in the policy are to be given their ordinary meaning. *Great American Insurance Co. v. State Farm Mutual Automobile Insurance Co.,* 412 Pa. 538, 194 A.2d 903 (1963). We therefore conclude that the Concealment or Fraud clause contained in the policy refers only to fraud in the inducement of the insurance policy and not any subsequent fraud. Accordingly, Marinelli's previous criminal conviction based on fraudulent representations concerning the instant policy does not bar her recovery under the policy because the allegations contained in the indictment only concern misrepresentations and deceit in the attempted recovery under the policy and not in the inducement of the policy.

Reliance argues that by accepting this construction, insurers would have no policy defense against insureds who attempt to defraud insurance companies subsequent to the issuance of a policy. We can only observe that Reliance is the master of its policy and certainly has within its control the power to write the subject provision to conform with its concerns. The courts of this Commonwealth have consistently upheld the defense Reliance is now claiming when the policy provided for such defense. *See e.g., Williams v. Lumbermen's Insurance Co.,* 332 Pa. 1, 1 A.2d 658 (1938); and *Allegro, supra.* We can foresee no reason why the courts would not recognize this defense when properly preserved in the policy.

Based upon our disposition of this case, we need not address Marinelli's remaining argument.

---

**5.** Reliance has provided this Court what appears to be a slip opinion from the Third Circuit Court of Appeals, unrelated to the instant case, upon which is conspicuously stamped "NOT FOR PUBLICATION." We have, therefore, totally disregarded this "authority."

Reliance has also cited *Home Insurance v. Hardin,* 528 S.W.2d 723 (Ky.1975), however, review of that case discloses that the provision regarding the defense of concealment and fraud provides, "This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact...." *Id.* at 724–25. This case, therefore, also fails to provide Reliance any support.

Judgment reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction is not retained.